David VANDERPOOL, Petitioner

v.

**PENNSYLVANIA BOARD
OF PROBATION AND
PAROLE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 22, 2005.
Decided May 27, 2005.

David Crowley, Bellefonte, for petitioner.

Arthur R. Thomas, Asst. Counsel and Victoria S. Freimuth, Chief Counsel, Harrisburg, for respondent.

BEFORE: McGINLEY, Judge, LEADBETTER, Judge, and JIULIANTE, Senior Judge.

OPINION BY Judge McGINLEY.

■ David Vanderpool (Vanderpool) petitions for review from a final determination of the Pennsylvania Board of Probation and Parole (Board) that recommitted him to serve nine months backtime.[1]

---

1. This Court's review is limited to determining whether the Board's findings are supported by substantial evidence, are in accordance with the law, and whether constitutional rights have been violated. *Krantz v. Pennsylvania Board of Probation and Parole,* 86 Pa.Cmwlth. 38, 483 A.2d 1044 (1984). This Court will interfere with the Board's exercise of administrative discretion where it has been abused or exercised in an arbitrary or capricious manner.

Vanderpool was sentenced to a term of four years six months to nine years.[2] Vanderpool was paroled on November 5, 1991.

The Board declared Vanderpool delinquent effective May 13, 1994, and also declared that if Vanderpool were not arrested or located by May 5, 1996, the Board was to cancel the delinquency and close the case. On June 13, 1997, the Board removed the directive to cancel the delinquency and close the case. On February 21, 2004, Vanderpool was arrested and charged with theft for allegedly taking money from a waiter's tip jar on an AMTRAK train. On February 22, 2004, the Board issued a warrant to commit and detain Vanderpool. At the same time Vanderpool was wanted in New York State. The Board discovered that Vanderpool had been convicted of theft/unlawful taking, criminal conspiracy, and theft/receiving stolen property and was sentenced to probation in 1993. This information was listed on a Court History printout dated August 16, 2004, under the name "Morgan Dancy."

The Board charged Vanderpool as a convicted parole violator for the 1993 conviction and as a technical parole violator for violating Condition 3(a) for failing to maintain regular contact with the parole supervision staff and Condition 3(b) for failing to inform parole supervision staff within seventy-two hours of his arrest in 1992 which led to the 1993 conviction. The Board received verification of the 1993 conviction on September 4, 2004.

The Board held a violation/revocation hearing on September 21, 2004. At the commencement of the hearing, Vanderpool's counsel objected to the proceeding on the basis that the proceeding was untimely because Vanderpool was confined solely on the Board's warrant since February 22, 2004. Vanderpool's counsel related that Vanderpool, while in custody for approximately two months, petitioned for administrative relief. The Board responded by letter dated July 29, 2004:

Receipt is acknowledged of your petition for administrative review (i.e. Motion to Dismiss Parole Violation Charge) received April 15, 2004, wherein you object to parole violation charges on the basis that you were not afforded a timely preliminary hearing.

A review of the record shows that you have not been recommitted as a parole violator as of the date of this correspondence. However, you have been convicted on new criminal charges since you were last paroled on November 5, 1991. Furthermore, you are currently detained on various new criminal charges that have not been resolved yet. Consequently, the Board was not required to provide you with a preliminary hearing after placing its detainer on you.

Board Letter, July 29, 2004, at 1; Certified Record (C.R.) at 73.

Parole Agent Chantal–Lise Mirman (Agent Mirman) explained why there was a delay in holding Vanderpool's hearing after he returned to the Board's custody:

At that point there were quite a few things that had to be looked at because he had arrests in other states, three arrests here, one conviction here and all under different names, different photo numbers. And it was very difficult to obtain—some of the information I still

*Green v. Pennsylvania Board of Probation and Parole,* 664 A.2d 677 (Pa.Cmwlth.1995).

2. Vanderpool was effectively sentenced on May 5, 1987, to a term of one to two years for robbery and consecutively sentenced on the same day to a term of one to two years each for two counts of criminal conspiracy, one to two years for theft by unlawful taking, and six months to a year for credit card fraud.

haven't obtained by [sic] I just obtained this November—I mean September 4 for the revocation. I just got this and it had been requested immediately. And I didn't even end up getting it through our own channels. I was talking to a case specialist at the Criminal Justice Center.

Notes of Testimony, September 21, 2004, (N.T.) at 14; C.R. at 55. Agent Mirman further explained that it took until September 4, 2004, to get a certified copy of the conviction because the case was originally a "John Doe" case and then was under the alias of "Robert Dough [ph]" and the court history was under "Morgan Dancy." N.T. at 15; C.R. at 56.

The Board denied Vanderpool's motion. Vanderpool admitted to committing the two technical violations. The Board entered the copy of the 1993 conviction into evidence.

In a decision mailed October 7, 2004, the Board recommitted Vanderpool to serve nine months backtime as a technical parole violator concurrent with nine months backtime as a convicted parole violator. On November 1, 2004, Vanderpool petitioned for administrative review and relief and alleged that he was detained solely on the Board's warrant and in the Board's jurisdiction without any type of hearing from February 21, 2004[3], to September 21, 2004, in violation of his constitutional rights to due process, that the Board failed to meet its burden of proving the hearing was timely, and because proof of conviction was immaterial to the issue of whether Vanderpool committed technical violations of his parole, the inability to obtain certified court documents to prove the conviction did not excuse the delay in proceeding on the technical violations.

On November 17, 2004, the Board denied Vanderpool's petition:

Board regulations provide in pertinent part that, '[a] revocation hearing shall be held within 120 days from the date the Board received official verification of the plea of guilty or nolo contendere or of the guilty verdict at the highest trial court level' except under limited circumstances. 37 Pa.Code § 71.4. A review of the record in this case reflects that the Philadelphia Police arrested your client for new criminal charges on October 27, 1992. He posted bail from the arrest on October 28, 1992. On November 9, 1993, Mr. Vanderpool was convicted of Theft, Conspiracy and Receiving Stolen Property. He was later declared delinquent by the Board effective May 13, 1994. He was then returned to a state correctional institution on March 2, 2004.

Because Mr. Vanderpool was not confined under the jurisdiction of the Department of Corrections at the time he was convicted, the Board was required to hold his revocation hearing within 120–days from the date it received official verification of the conviction.... The Board received *official verification* ... of his conviction on September 4, 2004 and held a revocation hearing on September 21, 2004, which is only 17 days after the date of official verification. Furthermore, because a preliminary hearing was not required in this case, the Board was required to hold a violation hearing within 120 days of the date Mr. Vanderpool was charged with the technical violations. A review of the record reflects that your client was charged with violating conditions # 3A (failure to report) and # 3B (failure to

---

**3.** The record indicates that Vanderpool was returned to the Board's custody on February 22, 2004.

inform paroled staff of an arrest within 72 hours) of his parole on September 12, 2004 and a violation hearing was held on September 21, 2004. Thus, the September 21, 2004 violation/revocation hearing was timely. (Citation and footnote omitted. Emphasis in original).

Board Decision, November 17, 2004, at 1; C.R. at 85.

■ Vanderpool contends that the revocation hearing was not timely because he was detained solely on the Board's warrant without any hearing from February 21, 2004, to September 21, 2004, and the Board acknowledged in July 2004, that it was aware of the conviction.

The Board's regulation, 37 Pa.Code § 71.4(1), provides in pertinent part:

The following procedures shall be followed before a parolee is recommitted as a convicted violator:

(1) A revocation hearing shall be held within 120 days from the date the Board received *official verification* of the plea of guilty or nolo contendere or of the guilty verdict at the highest court level except as follows:

(i) if a parolee is confined outside the jurisdiction of the Department of Corrections, such as confinement out-of-State, confinement in a Federal correctional institution or confinement in a county correctional institution where the parolee has not waived the right to a revocation hearing by a panel in accordance with *Commonwealth ex rel. Rambeau v. Rundle*, 455 Pa. 8, 314 A.2d 842 (1973), the revocation hearing shall be held within 120 days of the official verification of the return of the parolee to a State correctional facility. (Emphasis added).

Additionally, the Board's regulation, 37 Pa.Code § 61.1, defines official verification as "[a]ctual receipt by a parolee's supervising parole agent of a direct written communication from a court in which a parolee was convicted of a new criminal charge attesting that the parolee was so convicted."

■ When a parolee asserts that the Board held a revocation hearing beyond the 120–day period, the Board bears the burden of proving by a preponderance of the evidence, that the hearing was timely. *Taylor v. Pennsylvania Board of Probation and Parole*, 154 Pa.Cmwlth. 462, 624 A.2d 225, 227 (1993).

Here, there is no allegation that Vanderpool was confined in a federal, out of state, or county correctional facility, so 37 Pa. Code 71.4(1)(i) does not apply. The key question becomes whether the Board held the hearing within 120 days of the date when it received official verification of the conviction. It is undisputed that Agent Mirman received official verification of the conviction on September 4, 2004. The hearing was held on September 21, 2004, well within the 120 day period.

However, Vanderpool argues that our inquiry should not end there. He argues that he was returned to the Board's custody on February 21, 2004, that the Board was aware of his conviction at some time prior to September 4, 2004. As a result of the Board's knowledge of the conviction, the hearing was not timely. It is undisputed that Vanderpool was returned to the Board's custody on February 21, 2004. For support that the Board had knowledge of the conviction, Vanderpool points to the Board's letter of July 29, 2004, that denied Vanderpool's motion to dismiss parole violation charge in which the Board stated that "you have been convicted on new criminal charges since you were last paroled on November 5, 1991." Board Letter, July 29, 2004, at 1; C.R. at 73.

Even though the Board had knowledge that Vanderpool had been convicted of a crime since his release on parole in 1991, the regulation provides that the Board must hold the hearing within 120 days from the date that the Board receives official verification of a conviction. Agent Mirman testified that the Board did not receive official verification until September 4, 2004, in part because of the confusion that resulted from Vanderpool's use of aliases.

Vanderpool does not cite to any statute, regulation, or caselaw which mandates that the Board ignore its regulation which requires official verification and requires the 120 day period to commence either on the day a parolee is returned to the Board's custody or when the Board receives some sort of unofficial notice that a parolee may have been convicted.

In *Lee v. Pennsylvania Board of Probation and Parole*, 141 Pa.Cmwlth. 79, 596 A.2d 264 (1991), *petition for allowance of appeal denied*, 530 Pa. 647, 607 A.2d 256 (1992), this Court determined that even though a parolee's parole agent was on notice of a pending conviction, the 120-day period did not commence until the agent received official verification. In *Lee*, Daryl V. Lee (Lee) was arrested on drug charges while on parole on May 23, 1989. The Board issued a warrant to commit and detain on that same day. On January 12, 1990, Lee pled guilty to one count of delivery of a controlled substance, three counts of possession of a controlled substance, and one count of possession of drug paraphernalia and was sentenced to one to three years in prison. On July 17, 1990, the Board conducted a revocation hearing to determine whether Lee was a convicted parole violator. Lee objected on the ground that the hearing was untimely. The hearing examiner overruled the objection after it determined that the hearing was held within 120 days of the Board's

receipt of official verification, which was June 25, 1990. The Board recommitted Lee as a convicted parole violator to serve ten months backtime. Lee petitioned the Board for administrative relief which was denied. Lee then petitioned for review with this Court and asserted that the Board failed to provide him with a revocation hearing within a reasonable time as required by the Due Process Clause of the United States Constitution because even though the hearing was held within 120 days of the date the Board received the official verification of conviction, the hearing was conducted 186 days from the date of his guilty plea, and because his parole agent was on notice of the pending charges. *Lee*, 596 A.2d at 264–265.

This Court disagreed with Lee and affirmed:

> First, it is reasonable for the 120–day period mandated by 37 Pa.Code § 74.1(1) to begin to run on the date that the Board receives official verification of a parolee's conviction, because, to hold otherwise, would impose on the Board the Herculean task of searching the dockets of every court of record in the United States on a daily basis to discover when a parolee was convicted.... Moreover, considering the logistical problems the Board would face in discovering when a parolee was convicted, it is also reasonable for a parole agent to wait for official verification even if the agent is aware that charges are, or may be, pending. And finally, we hold as a matter of law, that if the parole revocation hearing is held within 120 days after the receipt of the certified charges, that also is reasonable for the purposes of due process. (Citations omitted).

*Lee*, 596 A.2d at 265.

Although this Court, in *Lee*, focused on whether there was a violation of Lee's rights to due process, this Court addressed

the use of the date of official verification of a conviction as the date to commence the 120–day period. As in *Lee*, Agent Mirman was generally aware that Vanderpool had been convicted while on parole, but even though the hearing was held more than 120 days after the date that the Board or its agent was aware of a conviction, the Board held the revocation hearing on September 21, 2004, within 120 days of the receipt of the official verification. This Court agrees with the Board that the revocation hearing was timely.[4]

Accordingly, we affirm.

**ORDER**

AND NOW, this 27th day of May, 2005, the order of the Pennsylvania Board of Probation and Parole in the above-captioned matter is affirmed.

---

4. For support, Vanderpool cites to *Fitzhugh v. Pennsylvania Board of Probation and Parole*, 154 Pa.Cmwlth. 123, 623 A.2d 376 (1993). In *Fitzhugh*, this Court remanded to the Board for proceedings adequate to establish the facts relating to a 143–day period between the conviction and the receipt of conviction records. This Court stated that if the Board was aware of the conviction records but did not retrieve them, there was a possibility that there was an unreasonable and unjustifiable delay.

*Fitzhugh* does not apply to the present case because here there was testimony from Agent Mirman that she attempted to secure the official verification within a reasonable time but encountered difficulty which she attributed to confusion surrounding Vanderpool's name and various aliases. The Board successfully established the reason for the delay.