**John TAYLOR, Petitioner**

v.

**PENNSYLVANIA BOARD OF PROBATION AND PAROLE, Respondent.**

Commonwealth Court of Pennsylvania.

Argued May 9, 2007.

Decided Aug. 15, 2007.

David Crowley, Chief Public Defender, Bellefonte, for petitioner.

Chad L. Allensworth, Asst. Counsel, Harrisburg, for respondent.

BEFORE: LEADBETTER, President Judge, and COLINS, Judge, and McGINLEY, Judge, and FRIEDMAN, Judge, and COHN JUBELIRER, Judge, and SIMPSON, Judge, and LEAVITT, Judge.

OPINION BY Judge LEAVITT.

John Taylor (Taylor), an inmate at the State Correctional Institution at Rockview (SCI–Rockview), petitions for review of the order of the Pennsylvania Board of Probation and Parole (Board) that denied his petition for administrative relief from the Board's order recommitting him on remand as a convicted parole violator. Taylor argues that the parole violation charge against him should be dismissed due to the Board's failure to hold a timely parole revocation hearing, as mandated by the Board's own regulations and by the Due Process Clause of the United States Constitution. We affirm the Board's order.

The relevant facts are undisputed. On May 22, 2003, Taylor was paroled while serving an imprisonment term of three to eight years for his April 20, 2000, conviction of burglary-related charges. On May 19, 2004, he was arrested and charged with burglary-related criminal offenses. The Board lodged a detainer against him the same day, and he returned to SCI–Graterford on June 8, 2004. Taylor was convicted of the new criminal charges on June 14, 2005, and sentenced on August 23, 2005, by the Court of Common Pleas of Philadelphia County.

On September 27, 2005, Parole Investigator, Lucille Pratt, sent the Board a computer printout of the court's history that showed Taylor's new convictions and sentence. In her cover memo, Pratt stated that she had been unable to provide evidence of Taylor's conviction any earlier. She explained as follows:

> Due to the Court's backlog for processing dispositions, the Court file is unavailable. Therefore, in lieu of the trial sheets, I have forwarded to you the Court's computerized record of the disposition, authenticated by the Court's seal.

Exhibit S–1; Certified Record at 68 (C.R.——).

A parole revocation hearing was held at SCI–Rockview on December 14, 2005. The Board recommitted Taylor as a convicted parole violator to serve fifteen months backtime. Taylor sought administrative relief from the recommitment decision, arguing that the Board failed to hold a timely hearing in accordance with its regulation, which requires that a revocation hearing be held "within 120 days from the date the Board received official verification of the plea of guilty or nolo contendere or of the guilty verdict at the highest

trial court level. . . ." 37 Pa.Code § 71.4(1). The Board denied Taylor's request for relief, holding that the revocation hearing had been timely because it was held seventy-eight days after the Board's receipt of the official verification of his convictions on September 27, 2005. On appeal, this Court remanded the matter to the Board to hold a new revocation hearing and to issue a new decision within ninety days because there was no transcript of the December 14, 2005, revocation hearing.

The Board held the remand hearing on August 2, 2006, at which Taylor was represented by counsel. Taylor argued that the December 14, 2005, revocation hearing was untimely and, in support, introduced into evidence a form "6–37" from the Court of Common Pleas of Philadelphia.[1] Exhibit D–1; C.R. 70. The handwritten instructions on the form direct the "Keeper of the Philadelphia County Prison" to retain Taylor upon his conviction subject to order of the trial court, and it is dated June 17, 2005. Counsel alleged that the Board received form 6–37 because Taylor brought it with him when he returned to SCI–Rockview. The form 6–37 was, in Taylor's view, an official verification of his conviction. In any case, Taylor argued that the Board was also aware of Taylor's convictions because on July 13, 2005, its office requested a parole investigator to obtain proof of his convictions.

In its decision of August 22, 2006, the Board again recommitted Taylor as a convicted parole violator to serve fifteen months of backtime and recalculated his maximum sentence date to be June 7, 2009. Taylor again filed a petition for administrative relief alleging, *inter alia,* that the Board had failed to hold a timely revocation hearing. The Board denied administrative relief, and Taylor petitioned for this Court's review.[2]

■ On appeal, Taylor raises one issue, namely that he did not receive a timely revocation hearing. He argues that the Board unreasonably delayed holding a revocation hearing after his conviction, which violates principles of due process. He also argues that the Board failed to follow its own regulation because it had an official verification of Taylor's conviction long before September 27, 2005, the date on which it received the certified copy of the court history showing Taylor's conviction.

■ We begin with a review of the applicable regulation and case law. When a parolee alleges that the Board failed to hold a timely revocation hearing, the Board has the burden of proof. *Mack v. Pennsylvania Board of Probation and Parole,* 654 A.2d 129, 130 (Pa.Cmwlth.1995). Where the Board has failed to meet the burden of establishing the timeliness of the revocation hearing, the appropriate remedy is dismissal of the parole violation charges with prejudice. *McDonald v. Pennsylvania Board of Probation and Parole,* 673 A.2d 27, 29 (Pa.Cmwlth.1996) (holding that the Board's failure to explain

---

1. The form contains the identifier "6–37 (Rev.2/69)" on the lower corner of the document. It shows "In the Court of Common Pleas of Philadelphia" at the top. It is a one-page document with four boxes to check; two boxes refer to courts, municipal and common pleas, and two boxes refer to two prison keepers. Most of the form consists of empty space where instructions on commitment and restraint can be written. In the case of Exhibit D–1, the instructions were written by Irene Gaynor, a "Pro Clerk" in hard-to-read, sloppy penmanship.

2. The Court's review is limited to determining whether constitutional rights were violated, errors of law were committed, or the Board's findings of facts were not supported by substantial evidence. *Morgan v. Pennsylvania Board of Probation and Parole,* 814 A.2d 300, 302 (Pa.Cmwlth.2003).

its delay in holding a parole revocation hearing requires that the charge of a parole violation be dismissed).

The regulation that governs whether a revocation hearing is timely provides as follows:

(1) A revocation hearing shall be held within *120 days from the date the Board received official verification of the plea of guilty or nolo contendere or of the guilty verdict* at the highest trial court level *except as follows:*

(i) If a parolee is confined outside the jurisdiction of the Department of Corrections, such as confinement out-of-State, confinement in a Federal correctional institution or confinement in a county correctional institution where the parolee has not waived the right to a revocation hearing by a panel in accordance with *Commonwealth ex rel. Rambeau v. Rundle,* 455 Pa. 8, 314 A.2d 842 (1973), the revocation hearing shall be held within 120 days of the official verification of the return of the parolee to a State correctional facility.

(ii) A parolee who is confined in a county correctional institution and who has waived the right to a revocation hearing by a panel in accordance with the *Rambeau* decision shall be deemed to be within the jurisdiction of the Department of Corrections as of the date of the waiver.

37 Pa.Code § 71.4(1) (emphasis added). Since Taylor does not fall into either of the above-recited exceptions, the Board's obligation to give Taylor a revocation hearing began 120 days after the "Board received official verification of the ... guilty verdict." *Id.*

The Board's regulation was designed specifically to satisfy due process. It has long been established that due process requires that parolees receive a hearing within a reasonable time after they are taken into custody for a parole violation. *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). In *United States ex rel. Burgess v. Lindsey,* 395 F.Supp. 404, 411 (E.D.Pa.1975), it was held that the Board's practice of waiting for a parolee's sentence on a new conviction before scheduling a revocation hearing was unreasonable. In that case, the District Court concluded that a nine-month gap between the parolee's conviction and the revocation hearing violated due process. As a result, the Board amended 37 Pa.Code § 71.4(1) to require a revocation hearing within 120 days of the Board's receipt of official verification of a new conviction.[3]

■ Taylor first argues that 37 Pa.Code § 71.4(1) violates the due process requirements established in *Morrissey* and *Lindsey.* He contends that the 120 days should begin from the date of the Board's actual or constructive knowledge of a conviction, not its receipt of official verification of that conviction. We disagree.

In *Lee v. Pennsylvania Board of Probation and Parole,* 141 Pa.Cmwlth. 79, 596 A.2d 264 (1991), this Court considered the argument that a parolee's revocation hearing conducted 186 days after his guilty plea violated due process because the parole agent was aware of the pending charges. The Court rejected the argument and held:

[A] parolee has a due process right to a revocation hearing within a reasonable

---

3. The current regulation was adopted in 1977 in response to *Lindsey* as we explained in *Auman v. Pennsylvania Board of Probation*

*and Parole,* 38 Pa.Cmwlth. 621, 394 A.2d 686 (1978).

time after being taken into custody.... Reasonableness requires a balancing of the interests of a parolee with the physical capacity of the Board to act on parole revocation matters.... First, *it is reasonable for the 120–day period mandated by 37 Pa.Code § 71.4(1) to begin to run on the date that the Board receives official verification of a parolee's conviction, because, to hold otherwise, would impose on the Board the Herculean task of searching the dockets of every court of record in the United States on a daily basis to discover when a parolee was convicted.* ... Moreover, considering the logistical problems the Board would face in discovering when a parolee was convicted, *it is also reasonable for a parole agent to wait for official verification even if the agent is aware that charges are, or may be, pending.*

*Id.* at 265 (citations omitted) (emphasis added). More recently in *Vanderpool v. Pennsylvania Board of Probation and Parole*, 874 A.2d 1280, 1284–1285 (Pa.Cmwlth. 2005), the Court reaffirmed the *Lee* holding and concluded that a revocation hearing held within 120 days from the receipt of the official verification, but more than 120 days after the Board became aware of the parolee's conviction, was timely. We, therefore, reject Taylor's argument that 37 Pa.Code § 71.4(1) does not comply with the requirements of due process.[4]

Taylor nonetheless argues that the December 14, 2005, revocation hearing was untimely because the Board offered no valid reason for the delay of two and one half months between the parole agent's request for proof of the convictions and the receipt of the official verification. In support, he relies on *Williams v. Pennsylvania Board of Probation and Parole*, 134 Pa.Cmwlth. 597, 579 A.2d 1369 (1990), and *Fitzhugh v. Pennsylvania Board of Probation and Parole*, 154 Pa.Cmwlth. 123, 623 A.2d 376 (1993), and *McDonald.*

In *Williams,* the Georgia State Board of Pardons and Paroles advised the parolee of his parole tentatively scheduled for December 1988. He was actually paroled in August 1989 and transferred to the custody of Pennsylvania authorities. The parolee argued that the revocation hearing held in October 1989, almost eleven months after his tentative release date, was untimely, in violation of his due process right. The Court found no explanation in the record for the eight-month delay between the parolee's December 1988 tentative release date and the August 1989 actual release date. Stating that unreasonable and unjustifiable delays, not attributable to the parolee or his or her counsel, did not toll the running of the 120–day period, the Court remanded the matter to the Board to determine when Georgia made the parolee available to Pennsylvania authorities and whether the Board acted with reasonable dispatch to return the parolee to Pennsylvania.

---

**4.** Before the Board, Taylor also argued that the 14–month delay between his convictions and the second revocation hearing held on remand denied his due process right. Pa. R.A.P.1951(b) provides in relevant part that "the court may at any time direct that the omission or misstatement be corrected and, if necessary, that a supplemental record be prepared and filed." *See also Ormes v. Department of Public Welfare,* 98 Pa.Cmwlth. 588, 512 A.2d 87 (1986) (remanding the matter to the agency for a further proceeding and a new decision because the cassette tapes for the prior hearing had been erased). Consequently, where, as here, this Court remanded the matter to the Board to hold a new revocation hearing due to the Board's failure to transcribe a revocation hearing, another revocation hearing held on remand more than 120 days after receipt of official verification is not considered to be untimely. *Joyce v. Pennsylvania Board of Probation and Parole,* 811 A.2d 73, 77 (Pa.Cmwlth.2002).

In *Fitzhugh*, the parolee pleaded guilty to the new criminal charges in July 1991. The Board's court liaison office date-stamped a packet of court records attesting to the parolee's guilty plea as received in November 1991, and a revocation hearing was held in February 1992. The parolee alleged that the Board had employees in the court system, whose sole function was to retrieve conviction records available within a few days after the sentence. Relying on *Williams*, the majority rejected "the notion that a parolee convicted of a new offense may be forced to wait for an unreasonable period for a revocation hearing until the Board chooses to retrieve his records, even though the Board has actual notice of the new conviction." *Fitzhugh*, 623 A.2d at 380. Stating that if the Board was aware of the conviction but did not retrieve available conviction records, there may be a possibility of unreasonable and unjustifiable delay, the majority remanded the matter to the Board to establish facts relating to the delay between the conviction and the receipt of the conviction records.[5]

In *McDonald*, the Court dismissed the parole violation charge against the parolee because the Board failed to hold a timely hearing. In that case, the Board had official verification of McDonald's conviction even before he was returned to SCI–Camp Hill, but it waited nine months to conduct a revocation hearing. We rejected the Board's argument that the 120–day period began to run only after the Board lodged its detainer, six months after McDonald was returned to custody. In the absence of any good reason for the lapse of nine months between McDonald's return to SCI–Camp Hill and his parole revocation hearing, we dismissed the parole violation charge.

These cases are distinguishable. Unlike *Fitzhugh*, Taylor does not allege that the Board had an employee working in the court system with immediate access to the court records. In any case, the Board began its efforts to obtain official verification one month after Taylor's convictions. Taylor's parole agent, Raffetto, denied that the parole office was aware of the existence of form 6–37, as claimed by Taylor, or of any court file verifying Taylor's convictions. He maintained that the computer printout of court history sent to the Board on September 27, 2005, was the first official verification. *See* August 2, 2006 Hearing, Notes of Testimony, pp. 13–14; C.R. 51–52. Parole Investigator Pratt explained that she searched the court records after receiving the request for proof of the convictions. Because of the unavailability of court files at that time due to the court's backlog, she sent the parole agent the computer printout of court history authenticated by the court's seal.[6] On these facts, there is no unreasonable delay on the part of the Board as there was in *Fitzhugh* and *Williams*. This case is unlike *McDonald* for the simple reason that Taylor's hearing was held within 120 days

5. The dissent noted that the majority improperly relied on the parolee's unsubstantiated allegations in his brief to support its decision.

6. Taylor complains that Pratt was not present at the hearing to explain how SCI–Rockview obtained a copy of the court document in July 2005 and to admit or deny that the document obtained by the Board on September 27, 2005, was available in July 2005. Raffetto's testimony and the documentary evidence presented by the Board established that the Board did not receive any court document until September 27, 2005. Under the clear language of 37 Pa.Code § 71.4(1), only the Board's *receipt* of the official court document verifying the convictions triggers the running of the 120–day period. Consequently, mere existence of a court document showing convictions, which was not received by the Board, is irrelevant in determining the timeliness of a revocation hearing.

of the official verification of Taylor's conviction. The Board did not wait six months to lodge a detainer after receiving the official verification, as was the case in *McDonald.*

Even assuming, *arguendo,* that the Board somehow had constructive possession of form 6–37, it cannot be considered "official verification" under 37 Pa.Code § 71.4(1). Official verification is defined as "[a]ctual receipt by a parolee's supervising parole agent of a direct written communication from a court in which a parolee was convicted of a new criminal charge attesting that the parolee was so convicted." 37 Pa.Code § 61.1. Form 6–37 was a communication to the "Keeper of the Philadelphia County Prison" to retain Taylor upon his convictions. It was not a direct communication from the Court of Common Pleas to the Board attesting to Taylor's new convictions. It was not an "official verification." Taylor's argument would turn every parole revocation hearing into a fact-intensive inquiry into whether some person in the employ of the Board knew or should have known of a parolee's conviction.

The computer printout of the court history met the definition of official verification because it was authenticated by the court's seal and directly informed the Board of Taylor's convictions on the new criminal charges. Therefore, it was the Board's receipt of the court history on September 27, 2005, that triggered the running of the 120–day period. The Board correctly applied its regulation.

For these reasons, the Board's order is affirmed.

### ORDER

AND NOW, this 15th day of August, 2007, the order of the Pennsylvania Board of Probation and Parole dated October 12, 2006, in the above-captioned matter is hereby AFFIRMED.

### DISSENTING OPINION BY Judge FRIEDMAN.

I respectfully dissent. The majority holds that the Pennsylvania Board of Probation and Parole (Board) met its burden of proving that John Taylor's (Taylor) parole revocation hearing was timely. In so holding, the majority concludes that the Board's delay in obtaining official verification of Taylor's conviction, in the form of a **computer printout,** was reasonable due to the unavailability of the **court file.** (Majority op. at 120.) Because the Board could have obtained a computer printout of Taylor's conviction at any time, I cannot agree that the unavailability of the court file justifies the Board's delay in obtaining official verification of the conviction.

On May 22, 2003, Taylor was released on parole from a sentence for burglary. (C.R. at 14.) On May 19, 2004, Taylor was arrested for burglary and related offenses. Taylor was convicted on June 14, 2005, and was sentenced on August 23, 2005. The Board received official verification of the conviction on September 27, 2005, and held a parole revocation hearing on December 14, 2005. (C.R. at 21–22, 26.)

On March 6, 2006, the Board issued a decision to recommit Taylor as a convicted parole violator (CPV) to serve fifteen months backtime. (C.R. at 29.) Taylor filed a petition for administrative relief, arguing that the December 14, 2005, hearing was untimely. (C.R. at 33–34.) On May 15, 2006, the Board issued a decision, stating that the December 14, 2005, hearing was timely because it was held only seventy-eight days after receipt of official verification of the conviction on September 27, 2005. (C.R. at 36.)

Taylor petitioned this court for review. The Board filed an application for remand, asserting that the December 14, 2005,

hearing "was inadvertently not recorded." (C.R. at 37.) This court granted the application on July 5, 2006, stating in a *per curiam* order that the Board "shall conduct a new hearing and issue a new decision within 90 days of the entry of this order." (C.R. at 37.)

The Board held a new hearing on August 2, 2006. (C.R. at 39.) At the hearing, Taylor objected that the December 14, 2005, hearing was untimely. In making this argument, Taylor asserted that his parole agent submitted a request for proof of conviction to the Board on July 13, 2005, but the Board waited more than two months, until September 27, 2005, to obtain official verification. (C.R. at 43, 68.) Taylor offered as evidence a parole agent's memo, dated September 27, 2005, showing that the Board received a request to obtain proof of Taylor's conviction on July 13, 2005. The memo stated, "Due to the Court's backlog for processing dispositions, the Court file is unavailable. Therefore, in lieu of the trial sheets, I have forwarded to you the Court's computerized record of the disposition, authenticated by the Court's seal." (C.R. at 68.) Taylor argued that the Board could have obtained a computer printout with the court's seal in July. (C.R. at 52–53.) In other words, Taylor did not believe that the unavailability of the court file justified the delay. The hearing examiner disagreed and overruled Taylor's timeliness objection.

On August 22, 2006, the Board issued a new decision to recommit Taylor as a CPV to serve fifteen months backtime. Taylor filed a petition for administrative relief, and, on October 12, 2006, the Board issued a decision affirming its August 22, 2006, decision. Taylor petitions this court for review, arguing that the Board failed to meet its burden of proving that the delay in obtaining official verification of Taylor's

conviction was not unreasonable and unjustifiable. I agree.

The Board has the burden of proving by a preponderance of the evidence the timeliness of a parole revocation hearing. *Fitzhugh v. Pennsylvania Board of Probation and Parole*, 154 Pa.Cmwlth. 123, 623 A.2d 376 (1993). A revocation hearing shall be held within 120 days from the date the Board receives official verification of a conviction. *Id.* If there is a delay between the time when the Board has notice of the conviction and the time when the Board receives official verification of the conviction, the Board has the burden of proving that the delay was not unreasonable and unjustifiable. *Id.*

Here, the Board argued that the delay in obtaining official verification of Taylor's conviction was not unreasonable and unjustifiable because the court file was not available. However, the unavailability of the court file did not prevent the Board from obtaining official verification of Taylor's conviction on September 27, 2005. Therefore, the unavailability of the court file did not justify the delay. Moreover, absent evidence relating to the Board's official verification procedures or the usual amount of time it takes the Board to obtain official verification of a conviction, I cannot conclude that the two-and-a-half-month delay in this case was reasonable.

Accordingly, unlike the majority, I would reverse.

Judge COLINS joins in this dissent.