**James BURNO, Petitioner**

v.

**PENNSYLVANIA BOARD OF PROBATION AND PAROLE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 12, 2013.

Decided June 7, 2013.

James Burno, pro se.

Chad L. Allensworth, Assistant Counsel, Harrisburg, for respondent.

BEFORE: McGINLEY, Judge, and SIMPSON, Judge, and COLINS, Senior Judge.

OPINION BY Senior Judge COLINS.

James Burno (Burno) petitions this Court for review of the July 17, 2012 order of the Pennsylvania Board of Probation and Parole (Board), which dismissed as untimely Burno's objection to the Board's revocation decisions of January 17, 2007 and April 6, 2007 and affirmed its recalcu-

lation decision of May 15, 2012. Finding no error, we affirm.

On December 12, 2001, the Board paroled Burno from a four-to-ten year prison sentence. (Record Item (R. Item) 5, Release Order, November 16, 2001, Certified Record (C.R.) at 18–21.) The maximum term expiry date for Burno's paroled sentence was October 24, 2007, leaving 2,142 days remaining on his sentence at the time of his parole. (R. Item 5, C.R. at 21; R. Item 15, Board Order to Recommit, May 8, 2012, C.R. at 125.) Federal prosecutors indicted Burno on new criminal charges in the United States District Court for the Middle District of Pennsylvania on October 19, 2005.[1] (R. Item 11, Transcript of December 8, 2006 Revocation Hearing, State Ex. 2, C.R. at 78, 80–81.) Burno was arrested by federal authorities on November 1, 2005 and posted bail the following day. (R. Item 11, C.R. at 80–81; R. Item 13, Request for Administrative Relief, January 30, 2007, C.R. at 111.) On November 3, 2005, Burno was picked up by the Board on parole violations and detained in the State Correctional Institution at Camp Hill (SCI Camp Hill). (R. Item 6, Warrant to Commit and Detain, C.R. at 24.) By a decision mailed March 29, 2006, the Board recommitted Burno as a technical parole violator to serve 9 months backtime when available. (R. Item 8, C.R. at 26–27.)

Burno pleaded guilty to the federal charges on April 12, 2006, and he was sentenced in federal court on September 1, 2006 to a term of 96 months to run consecutive with any other term he was serving. (R. Item 11, State Ex. 1, Def. Exs. 1, 2, C.R. at 99–101, 72–73.) Parole supervision staff received documentation from the federal court concerning Burno's guilty plea and sentencing on October 3, 2006. (R. Item 11, C.R. at 59, 63, 72.) While he

1. The charges were criminal conspiracy to distribute and attempt to possess with the intent to distribute cocaine hydrochloride. (R. Item 11, State Ex. 2, C.R. at 80.)

remained in state custody at SCI Camp Hill, Burno was transferred to federal custody to enter his guilty plea, for sentencing and on two other occasions. (R. Item 15, Department of Corrections Moves Report, May 8, 2012, C.R. at 124.) After each of these transfers, he was returned to SCI Camp Hill the same day. (*Id.*)

A parole revocation hearing was held on December 8, 2006, at which Burno argued that his hearing was not held within 120 days of his guilty plea on April 12, 2006 in violation of Board regulations. (R. Item 11, C.R. at 49.) The Board issued a decision on January 17, 2007 recommitting Burno as a convicted parole violator based on the federal charges to serve 18 months concurrent with his 9–month technical parole violation backtime. (R. Item 12, C.R. at 104–05.)

Burno petitioned for administrative relief from the January 17, 2007 Board decision. Before he received a response, however, the Board issued another decision on April 6, 2007 modifying its decision of March 29, 2006 that had recommitted Burno as a technical parole violator, to remove one of the technical parole violations included in the earlier decision. (R. Item 13, C.R. at 117.) Burno also petitioned for administrative relief from this decision. (R. Item 14, C.R. at 119–20.) The Board issued administrative responses denying the petitions for administrative relief from the January 17, 2007 and April 6, 2007 decisions, on May 14, 2007 and August 28, 2007, respectively. (R. Item 13, C.R. at 118; R. Item 14, C.R. at 123.)

Burno was transferred from SCI Camp Hill to federal custody on April 18, 2007, and he completed the federal sentence on April 27, 2012. (R. Item 15, C.R. at 124; R. Item 1, Bureau of Prisons Final Release Notice, January 31, 2012, Supplemental Certified Record (S.C.R.) at 1a.) The United States Bureau of Prisons (BOP) gave Burno credit on his federal sentence from the day of his arrest until he posted bail the next day (November 1 to November 2, 2005) and from September 1, 2006, the date of his federal sentencing, until the sentence was completed. (R. Item 1, S.C.R. at 3a.)

Following Burno's return from federal custody on May 7, 2012, the Board issued a decision on May 15, 2012 recalculating his parole violation maximum date to May 11, 2017. (R. Item 15, C.R. at 127.) The recalculated maximum date includes the period from Burno's original parole date of December 21, 2001 through the original maximum date of October 24, 2007, less 302 days of backtime credit for the period from November 3, 2005, the date Burno was picked up on parole violation detention, through the date of Burno's federal sentencing, September 1, 2006. (R. Item 15, C.R. at 125.)

Burno petitioned for administrative relief from the May 15, 2012 recalculation decision, along with the January 17, 2007 and April 6, 2007 decisions of the Board. (R. Item 16, C.R. at 128–32.) In its response of July 17, 2012, the Board dismissed Burno's challenges to the 2007 decisions because they were not received within 30 days of the mailing of those decisions. (R. Item 16, C.R. at 134.) The Board also affirmed its decision to recalculate the maximum sentence to May 11, 2017 (R. Item 16, C.R. at 135.) With regard to the period Burno spent in state custody after he was sentenced on the federal charges but before he was transferred to federal custody, the Board found Burno not entitled to any credit for this period because the federal sentence was not imposed to run concurrent with the original state sentence. (*Id.*)

On appeal to this Court, Burno makes two arguments.[2] First, he argues

that the Board's revocation hearing was untimely because it was not held within 120 days of his return to state custody after he pleaded guilty in federal court on April 12, 2006. 37 Pa.Code § 71.4(1). Though the Board, in its July 17, 2012 administrative response, dismissed as untimely Burno's objection to the timeliness of the revocation hearing, the Board now concedes that it erroneously sent its administrative response to Burno's petition for administrative review of the January 17, 2007 decision to an incorrect address, and Burno's challenge to the timeliness of the revocation hearing should now be addressed on the merits. *See* Respondent's Brief at 8. Second, Burno contends that the Board failed to credit the period spent in SCI Camp Hill after his federal sentencing on September 1, 2006 against his parole violation maximum date, and instead he should have continued receiving credit until his transfer to a federal facility on April 18, 2007. We find neither of these arguments availing.

▅▅▅ When a parolee asserts that the Board held a revocation hearing beyond the 120 days allowed by regulations, the Board bears the burden of proving by a preponderance of the evidence that the hearing was timely. *Taylor v. Pennsylvania Board of Probation and Parole*, 931 A.2d 114, 116 (Pa.Cmwlth.2007) (*en banc*). If the Board fails to meet its burden in demonstrating the timeliness of the hearing, the appropriate remedy is dismissal of the parole violation charges with prejudice. *Id.*

Board regulations require that a parole revocation hearing generally must be held within 120 days of the Board's receipt of the "official verification" of a guilty or nolo contendere plea or of a guilty verdict. 37 Pa.Code § 71.4(1). Official verification is defined in the regulations as "[a]ctual receipt by a parolee's supervising parole agent of a direct written communication from a court in which a parolee was convicted of a new criminal charge attesting that the parolee was so convicted." 37 Pa.Code § 61.1. At the parole revocation hearing, Burno's parole officer testified that his office received the certified notice of the judgment against Burno from the federal court after Burno's sentencing on September 1, 2006, and it was stamped as received by the Williamsport parole office on October 3, 2006. (R. Item 11, C.R. at 59, 63.) The notice was included as an exhibit to the parole revocation hearing and included in the certified record here. (R. Item 11, State Ex. 1, C.R. at 72–77.) The Board maintains that this acted as official verification of Burno's guilty plea and the hearing on December 8, 2006 was less than 120 days from October 3, 2006.[3]

Burno argues, however, that his case falls into one of the two exceptions to the general rule, which requires that:

> If a parolee is confined outside the jurisdiction of the Department of Corrections, such as confinement out-of-State, confinement in a Federal correctional institution or confinement in a county

---

**2.** Our scope of review of a Board decision is limited to a determination of whether necessary findings are supported by substantial evidence, an error of law was committed, or whether constitutional rights of the parolee were violated. *Slaymaker v. Pennsylvania Board of Probation and Parole*, 768 A.2d 417, 418 n. 1 (Pa.Cmwlth.2001).

**3.** At points in the record, the Board cites the date of receipt of the notice of Burno's federal sentencing as September 20, 2006, instead of October 3, 2006. (R. Item 10, Board Hearing Report, December 8, 2006, C.R. at 32; R. Item 13, C.R. at 118.) As both of these dates are less than 120 days before the revocation hearing, the distinction is immaterial for the purposes of this analysis.

correctional institution ..., the revocation hearing shall be held within 120 days of the official verification of the return of the parolee to a State correctional facility.

37 Pa.Code § 71.4(1)(i). Burno contends that the 120 day period should have begun running from the date that he pleaded guilty in federal court on April 1, 2006 and was returned to SCI Camp Hill later that day. Burno's argument is essentially that when he was transferred from SCI Camp Hill to federal custody for court proceedings, he was "outside the jurisdiction of the Department of Corrections" and his "return" to state custody would trigger the start of the 120 day period. *Id.* The hearing on December 8, 2006 would thus have impermissibly been held over 200 days after April 1, 2006. We disagree.

We addressed a timeliness argument on very similar facts in *Morgan v. Pennsylvania Board of Probation and Parole,* 814 A.2d 300 (Pa.Cmwlth.2003). In *Morgan,* the petitioner was in state custody for technical parole violations, when he was charged with a new federal crime. *Id.* at 301. Morgan was transferred via judicial writ to a federal correctional facility for one week, during which time he pleaded guilty to the federal charges. *Id.* At the end of the week in federal custody, Morgan was returned to SCI Camp Hill. *Id.* Morgan was sentenced three months after entering his plea, and the Board received official verification of the federal guilty plea a month after the sentencing. *Id.* The parole revocation hearing was scheduled two months after receipt of the official verification of the guilty plea, and six months after the guilty plea. *Id.* at 301–02.

The Court noted that a prisoner transferred via judicial writ to present the prisoner on new charges in another jurisdiction is:

considered to remain in the primary custody of the first jurisdiction unless and until the first sovereign relinquishes jurisdiction over the person. The receiving sovereign ... is, therefore, considered simply to be "borrowing" the prisoner from the sending sovereign for the purposes of indicting, arraigning, trying, and sentencing him.

*Id.* at 303 (*quoting Ruggiano v. Reish,* 307 F.3d 121, 125 n. 1 (3d Cir.2002)). The Court in Morgan concluded that, though Morgan was physically in federal custody for one week, "he technically never left the Board's jurisdiction." *Id.* Thus, Morgan was never confined "outside the jurisdiction of the Department of Corrections" and did not fall within the exception to the 120–day time limit. *Id.; see also Montgomery v. Pennsylvania Board of Probation and Parole,* 808 A.2d 999 (Pa.Cmwlth. 2002) (finding parolee serving backtime on a technical parole violation who was transferred from a state facility to a county facility for a trial on new charges never left the jurisdiction of the Department of Corrections).

Because Burno never left the state's jurisdiction and the Board met its burden by demonstrating that it received official notification of Burno's guilty plea within 120 days of the parole revocation hearing, we find that Burno's hearing was timely.

■ Burno also challenges the credit he received towards his original sentence for the period he was in state custody prior to his transfer to a federal facility to serve his sentence. Burno was given credit for 302 days of backtime during this period from the date he was picked up on a detainer, November 3, 2005, through the date of sentencing on his federal charges, September 1, 2006. (R. Item 15, C.R. at 125.) Federal officials calculated his sentence to begin on the date of sentencing, even though Burno remained at SCI Camp

Hill—except for brief transfers to federal custody via judicial writ—until April 18, 2007. (R. Item 1, S.C.R. at 3a.)

Burno maintains that the BOP erred in including the period from September 1, 2006 through April 18, 2007 in his federal sentence and that instead he should have received credit from the Board for this period because he was confined in a state facility. Burno's argument would require that he receive a "double credit" on his original and new sentences for the September 1, 2006 through April 18, 2007 period, notwithstanding the fact that the BOP chose the sentencing date as the start of his federal sentence.

■ The Parole Act in effect at the time of Burno's recommitment required that a parolee who is paroled from a state sentence and then convicted of an offense in a different jurisdiction must serve the sentences consecutively, with the new sentence being served first before the balance of the original sentence. Act of Aug. 6, 1941, P.L. 861, added by the Act of August 24, 1951, P.L. 1401, *as amended, formerly* 61 P.S. § 331.21a(a).[4] A parolee is entitled to credit on his original sentence for any period when the parolee is "being held in custody solely because of a detainer lodged by the Board." *Gaito v. Pennsylvania Board of Probation and Parole*, 488 Pa. 397, 403, 412 A.2d 568, 571 (1980).

■ Initially, we note that it is not clear that the BOP erred when it gave Burno credit on his sentence beginning on the date of sentencing rather than the date he was moved to a federal facility. While a federal sentence commences when a defendant is "received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence

is to be served," 18 U.S.C. § 3585(a), the BOP is authorized to designate a non-federal facility as the official detention facility where the defendant will serve the sentence, so long as it meets certain minimum requirements. 18 U.S.C. § 3621(b). We previously noted in *Bowman v. Pennsylvania Board of Probation and Parole*, 930 A.2d 599 (Pa.Cmwlth.2007), that the BOP is authorized to grant credit for time spent by a prisoner in state facilities and often does so. *Id.* at 605 (*citing Reno v. Koray*, 515 U.S. 50, 115 S.Ct. 2021, 132 L.Ed.2d 46 (1995)). Regardless of the appropriateness of the decisions made by the BOP in Burno's case, the correct computation of a sentence imposed by a separate sovereign is not within the purview of this Court and there is no remedy that we can grant based on a putative error by the BOP. *Id.* at 605–06.

This Court has ordered a parolee to receive double credit on a new and original sentence for time served in a Pennsylvania facility in the limited situations where the jurisdiction imposing the new sentence deemed it to run concurrently with the original sentence. *See Santiago v. Pennsylvania Board of Probation and Parole*, 937 A.2d 610 (Pa.Cmwlth.2007) *(en banc)*; *Walker v. Pennsylvania Board of Probation and Parole*, 729 A.2d 634 (Pa.Cmwlth. 1999).

For example, in *Santiago*, the parolee was detained by the Board in 2001 as a parole violator and was then transferred in 2004 to Maryland for a trial on new criminal charges. *Id.* at 611–12. Following a conviction on the new charges, the Maryland court sentenced Santiago to a four-year term to be served concurrently with any other outstanding terms and set the term to begin in 2002, two years prior to

---

**4.** The Parole Act, as the law was commonly known, was superseded in 2009 by the Prisons and Parole Code, 61 Pa.C.S. §§ 101–6309.

the sentencing. *Id.* Santiago was returned to Pennsylvania and the Board set his new maximum date without giving any credit to the time spent in Pennsylvania prisons that Maryland also credited on its sentence, in essence converting the Maryland sentence from a concurrent sentence to a consecutive sentence that would be served first. *Id.* at 612. We reversed the Board, holding that, while Pennsylvania is not required to give full faith and credit to the Maryland order, the Board also had no authority to convert the concurrent Maryland sentence into a consecutive sentence. *Id.* at 615–16.

The rationale for double credit in *Santiago*—a concurrent sentence issued by an out-of-state court—is absent here as the federal court sentenced Burno to a ninety-six month consecutive term. (R. Item 11, State Ex. 1, C.R. at 73.). Moreover, *Santiago,* like *Bowman,* undermines the implicit assumption underlying Burno's argument that the location where a parolee is detained should determine where the credit should be applied. In *Santiago,* the Maryland court imposed its sentence to be served largely in Pennsylvania prisons and we noted that the Board's decision to effectively convert the Maryland sentence from a concurrent one to a consecutive one "would frustrate Pennsylvania courts from imposing sentences [to be served under the authority of another sovereign] as provided for in the Sentencing Code." *Santiago,* 937 A.2d at 615 (*citing* 42 Pa.C.S. § 9761(b)).

The cases relied on by Burno are inapplicable to the facts before us, because those cases relate to backtime credit for *pre-sentence* terms of confinement. In *Davidson v. Pennsylvania Board of Probation and Parole,* 722 A.2d 232 (Pa. Cmwlth.1998), the parolee's federal sentence included an apparently erroneous credit for over two years the parolee served in a state facility after posting bail on new federal charges but *before* his guilty plea in the federal case. Likewise in *Serrano v. Pennsylvania Board of Probation and Parole,* 672 A.2d 425 (Pa. Cmwlth.1996), we reversed the Board's decision to refuse the parolee credit on a six-month period after the Board lodged a detainer on parolee and *before* parolee's guilty plea to the new county charges. In each of these cases, unlike the present case, no new sentence had been imposed so the Board was required to provide backtime credit for pre-sentence time because the parolee was "being held in custody solely because of a detainer lodged by the Board." *Gaito,* 488 Pa. at 403, 412 A.2d at 571. Here, Burno was being held on other grounds aside from the detainer after September 1, 2006, namely the federal sentence. Accordingly, the Board did not err in refusing to provide him with a double credit on his original sentence for time already credited to his new federal sentence.

For the foregoing reasons, we affirm the Board.

### ORDER

AND NOW, this 7th day of June, 2013, the order of the Pennsylvania Board of Probation and Parole in the above-captioned matter is AFFIRMED.