IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Edward Foley,                              :
                    Petitioner             :
                                           :
        v.                                 :     No. 1792 C.D. 2017
                                           :     Submitted: May 4, 2018
Pennsylvania Board of Probation and        :
Parole,                                    :
                    Respondent             :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE ROBERT SIMPSON, Judge
           HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY PRESIDENT JUDGE LEAVITT                           FILED: July 23, 2018

        Edward Foley petitions for review of an adjudication of the
Pennsylvania Board of Probation and Parole (Board) that recommitted him as a
convicted parole violator. Foley argues that the Board's panel revocation hearing
was untimely because it was held more than 120 days after he was returned to a State
Correctional Institution (SCI) following his conviction on new criminal charges.
Discerning no merit to Foley's argument, we affirm the Board.

        On May 16, 2016, Foley was paroled from a one to two-year sentence
he received in 2015 for violating probation. On October 31, 2016, Foley was
arrested in Franklin County and charged with driving under the influence (DUI). On
January 12, 2017, Foley was arrested by Board agents and charged with violating
his parole. The Board detained and incarcerated Foley at SCI-Camp Hill that same
day.

        On January 18, 2017, the 39th Judicial District, Franklin County
Branch issued a writ to transfer Foley from SCI-Camp Hill to the Franklin County

Prison so that he could attend a preliminary hearing on the DUI charge. Foley was transferred to Franklin County on January 23, 2017. On January 27, 2017, the State Police charged Foley with theft by deception, forgery, and unauthorized use of another person's financial information. On April 12, 2017, Foley pled *nolo contendere* to the DUI charge and the additional charges. He was returned to SCI-Camp Hill on April 24, 2017.

On June 6, 2017, the Board received official verification of Foley's new convictions. On June 28, 2017, he was recommitted as a technical parole violator to serve four months of backtime. On July 6, 2017, Foley received a copy of the Board's Notice of Charges and Hearing, which scheduled a non-panel revocation hearing on July 28, 2017, at SCI-Camp Hill. On July 26, 2017, Foley learned that he would be transferred to SCI-Rockview the next day and that his revocation hearing was rescheduled to August 8, 2017. The Notice of Charges and Hearing was served on Foley on August 3, 2017, and again on August 29, 2017, which scheduled the revocation hearing for September 11, 2017, when the Board held the revocation hearing. On September 28, 2017, Foley was recommitted as a convicted parole violator.

On October 3, 2017, Foley filed an administrative appeal challenging the September 11, 2017, revocation hearing as untimely. Specifically, Foley asserted that the 120-day deadline for holding the hearing began to run when he was returned to SCI-Camp Hill on April 24, 2017, not when the Board received verification of his new convictions on June 6, 2017. Foley Brief at 13.[1] The Board denied Foley's request for administrative relief, for the stated reason that the hearing

---

[1] The date of the hearing, September 11, 2017, was 140 days after Foley was returned to SCI-Camp Hill from the Franklin County Prison and 97 days after the date on which the Board received official verification of Foley's new convictions.

was held 97 days after the Board received official verification of Foley's conviction. Foley petitioned for this Court's review.

On appeal,[2] Foley argues that the Board erred in affirming his recommitment because it failed to provide him with a timely revocation hearing. At issue in this case is the day on which the 120-day deadline for holding the hearing began to run.

We begin with the applicable law. Due process requires that a parolee receive a timely hearing after he is taken into custody for a parole violation. *Taylor v. Pennsylvania Board of Probation and Parole*, 931 A.2d 114, 117 (Pa. Cmwlth. 2007) (citing *Morrissey v. Brewer*, 408 U.S. 471 (1972)). In accordance with that principle, the Board has obligated itself by regulation to hold a parole revocation hearing within 120 days of receiving official verification of the parolee's conviction, as follows:

> The following procedures shall be followed before a parolee is recommitted as a convicted violator:
>
> > (1) A revocation hearing shall be held within 120 days from the date the Board received official verification[3] of the plea of guilty or nolo contendere or of the guilty verdict at the highest trial court level except as follows:
> >
> > > (i) If a parolee is confined outside the jurisdiction of the Department of

---

[2] Our review determines whether constitutional rights have been violated, whether an error of law has been committed or whether the necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. §704; *Miskovitch v. Pennsylvania Board of Probation and Parole,* 77 A.3d 66, 70 n.4 (Pa. Cmwlth. 2013), *appeal denied*, 87 A.3d 322 (Pa. 2014).

[3] "Official verification" is "[a]ctual receipt by a parolee's supervising parole agent of a direct written communication from a court in which a parolee was convicted of a new criminal charge attesting that the parolee was so convicted." 37 Pa. Code §61.1.

> Corrections, such as confinement out-of-State, confinement in a Federal correctional institution or confinement in a county correctional institution where the parolee has not waived the right to a revocation hearing by a panel in accordance with *Commonwealth ex rel. Rambeau v. Rundle*, 455 Pa. 8, 314 A.2d 842 (1973), the revocation hearing shall be held within 120 days of the official verification of the return of the parolee to a State correctional facility.

37 Pa. Code §71.4(1)(i).[4]

Foley argues that the exception in Section 71.4(l)(i) is applicable here because he was confined in a county jail and did not waive his right to a revocation hearing before a panel. 34 Pa. Code §71.4(l)(i). Both Foley and the Board assert that our decisions in *Morgan v. Pennsylvania Board of Probation and Parole*, 814 A.2d 300 (Pa. Cmwlth. 2003), and *Montgomery v. Pennsylvania Board of Probation and Parole*, 808 A.2d 999 (Pa. Cmwlth. 2002), support their respective positions.

In *Morgan*, the parolee was in state prison serving 12 months of backtime as a technical parole violator, when he was charged with federal crimes. He was transferred to a federal detention center for approximately one week, where he entered a guilty plea to the federal charges. He was then returned to state prison. The Board conducted a parole revocation hearing on the basis of his federal conviction approximately six months after his return to the state prison and two months after the Board's receipt of the official verification of his federal conviction.

---

[4] The Board bears the burden of establishing the timeliness of a panel revocation hearing; if the Board fails to meet its burden by explaining the basis for any delay, the appropriate remedy is dismissal of the parole violation charges with prejudice. *See McDonald v. Pennsylvania Board of Probation and Parole*, 673 A.2d 27 (Pa. Cmwlth. 1996).

The parolee asserted that the 120-day deadline began to run when he was returned to state custody, and not when the Board received official verification of his conviction. In rejecting the parolee's argument, this Court explained:

> When a prisoner is detained pursuant to a writ for the purposes of presenting him to the court on new criminal charges, the prisoner is "considered to remain in the primary custody of the first jurisdiction unless and until the first sovereign relinquishes jurisdiction over the person. The receiving sovereign ... is, therefore, considered simply to be 'borrowing' the prisoner from the sending sovereign for the purposes of indicting, arraigning, trying, and sentencing him."

*Morgan,* 814 A.2d at 303 (quoting *Ruggiano v. Reish*, 307 F.3d 121, 125 n.1 (3d Cir. 2002)).[5] Because the parolee never left the Department of Corrections' jurisdiction even while physically in the custody of federal authorities to answer criminal charges, the exception in 34 Pa. Code §71.4(l)(i) did not apply. Official notification was the operative date for calculating the 120-day deadline for holding a timely hearing.

In *Montgomery*, the parolee was recommitted to state prison as a technical parole violator. While serving his backtime, he was transferred to county jail for a non-jury criminal trial. Approximately one month later, he was returned to state prison. Six months later, the Board received verification of his new conviction and scheduled a revocation hearing to recommit the parolee as a convicted parole violator. As in *Morgan,* the parolee argued that the 120-day period began to run upon his return to state prison, not when the Board received official notification of his new conviction. This Court held that the exception did not apply because the

---

[5] *Ruggiano* was superseded on other grounds by Section 5G1.3 of the Federal Sentencing Guidelines, 18 U.S.C., FSG §5G1.3 (2003), as stated in *Smith v. McKean*, 580 F.App'x. 98, 99 (3d Cir. 2014).

parolee had been serving his backtime sentence for the technical parole violation during the relevant period and, thus, never left the jurisdiction of the Department of Corrections. Accordingly, his revocation hearing was timely held.

Foley contends that *Morgan* and *Montgomery* are distinguishable because he was not serving backtime when he was transferred from SCI-Camp Hill to Franklin County and then back to SCI-Camp Hill. He notes that in *Morgan* this Court stated that we rejected the parolee's argument in *Montgomery* "because the parolee was continuously serving his technical parole violation backtime, although physically in a county jail, [and] never left the jurisdiction of the Department of Corrections." *Morgan*, 814 A.2d at 303. Similarly, in *Morgan* the parolee was serving his backtime in state prison when he was transferred to a federal detention center.

Foley focuses on *why* the Department of Corrections had jurisdiction over the parolees in *Morgan* and *Montgomery*, *i.e.,* they were serving backtime sentences. The salient point, however, is the fact that the Department had jurisdiction over the parolee at the time of transfer and retained it throughout the relevant period. It matters not whether the parolee was serving a backtime sentence, as in *Morgan* and *Montgomery,* or was detained on the Board's warrant, as in this case.[6] The issuance of the writ by the 39th Judicial District, Franklin County Branch

---

[6] Foley emphasizes that the regulation itself cites as an example of confinement outside the jurisdiction of the Department of Corrections "confinement in a county correctional institution where the parolee has not waived the right to a revocation hearing." 37 Pa. Code §71.4(l)(i). Foley overlooks that he was first incarcerated on the Board's detainer, thereby subjecting him to the Department of Corrections' jurisdiction. When he was transported to Franklin County pursuant to the court of common pleas' writ, no "county confinement" occurred. Although he "was physically in the care of other authorities, he technically never left the [Department's] jurisdiction." *Morgan,* 814 A.2d at 303.

6

did not interrupt the Department of Corrections' jurisdiction over Foley, who remained in the custody of the Department.[7]

Indeed, Foley's argument was raised and rejected by this Court in *Nance v. Pennsylvania Board of Probation and Parole* (Pa. Cmwlth., No. 1901 C.D. 2011, filed July 20, 2012).[8] In *Nance* the parolee was arrested on new criminal charges while on parole. He posted bail on the new charges, but the Board had lodged a detainer warrant. As such, the parolee was transferred from the county jail to state prison. Three months later, he was transferred to the county jail, where he entered a guilty plea and was sentenced. He was returned to state prison the same day.

The Board received official verification of the new conviction four months later and held a revocation hearing within 38 days of receiving the official verification. The parolee argued that the revocation hearing was untimely because more than 120 days had passed since his return to state prison. He also argued that

---

[7] Foley suggests that the primary jurisdiction analysis in *Morgan* and *Ruggiano* should be limited to cases involving the allocation of sentence credit. We see no reason to limit its principles in that respect. This Court has expressly relied on this primary jurisdiction analysis as "a means for resolving jurisdictional disputes between the sovereigns" and held that whichever sovereign first arrested the defendant has primary jurisdiction. *Newsuan v. Pennsylvania Department of Corrections*, 853 A.2d 409, 411 (Pa. Cmwlth. 2004) (citing *Chambers v. Holland,* 920 F. Supp. 618, 622 (M.D.Pa.), *aff'd,* 100 F.3d 946 (3d Cir.1996)). Further, "[p]rimary jurisdiction remains vested in the sovereign that first arrested the defendant until it relinquishes its priority of jurisdiction by, e.g., bail release, dismissal of the state charges, parole release, or expiration of the sentence." *Id.* (citing *Chambers,* 920 F. Supp. at 622). *See also Johnson v. Pennsylvania Board of Probation and Parole*, 19 A.3d 1178, 1180 (Pa. Cmwlth. 2011) (noting that the place of original incarceration is the jurisdiction which maintains custody). The primary jurisdiction analysis is especially appropriate where, as here, a parolee asserts that there is no basis to conclude that he did not leave state jurisdiction when he was transferred temporarily to a county facility on a judicial writ.

[8] This Court's unreported memorandum opinions may be cited "for [their] persuasive value, but not as binding precedent." Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code §69.414(a).

7

*Morgan* and *Montgomery* were limited to their facts, *i.e.,* that the parolees had already been recommitted and were serving their backtime when their transfers occurred. The parolee attempted to distinguish his case from this precedent by arguing that because he was held solely on the Board's detainer, the Board lost jurisdiction when he was transferred to the county jail. We rejected this argument. We explained that the parolee was transferred only for the disposition of the new criminal charges, not to serve a county sentence. As such, while he was physically under the control of county authorities, he never left state jurisdiction.

Here, Foley was transferred to answer new criminal charges, not to serve a county sentence. Accordingly, he never left the jurisdiction of the Department of Corrections when he was transferred to Franklin County. Because Foley was never under the jurisdiction of Franklin County, the exception under 37 Pa. Code §71.4(1)(i) does not apply here. Under 37 Pa. Code §71.4(1), the 120-day period began to run when the Board received official verification of Foley's new convictions, on June 6, 2017. Foley's revocation hearing, held 97 days later on September 11, 2017, was timely.

Accordingly, we affirm the Board.

_____
MARY HANNAH LEAVITT, President Judge

8

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Edward Foley, : 
          Petitioner : 
: 
        v. :   No. 1792 C.D. 2017
: 
Pennsylvania Board of Probation and : 
Parole, : 
          Respondent : 

# **O R D E R**

AND NOW, this 23rd day of July, 2018, the order of the Pennsylvania Board of Probation and Parole dated November 28, 2017 in the above-captioned matter is AFFIRMED.

_____

MARY HANNAH LEAVITT, President Judge