**Rufus LAWSON, Petitioner**

v.

**PENNSYLVANIA BOARD OF PROBATION AND PAROLE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 9, 2009.

Decided June 18, 2009.

Timothy P. Wile, Asst. Public Defender, Norristown, for petitioner.

Arthur R. Thomas, Asst. Counsel and Victoria S. Madden, Chief Counsel, Harrisburg, for respondent.

---

1. *See* http://www.odmp.org.

BEFORE: McGINLEY, Judge, and LEAVITT, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Judge LEAVITT.[1]

Rufus Lawson (Lawson) petitions for review of an order of the Pennsylvania Board of Probation and Parole (Board) that denied Lawson's administrative appeal from the Board's decision recommitting him as a convicted parole violator. Lawson argues that the parole violation charge against him should have been dismissed because the Board's parole revocation hearing, conducted 61 days after it received official verification of Lawson's conviction, was not timely. Lawson contends that the hearing was not timely because the Board failed to exercise due diligence to obtain official verification of his conviction in a prompt manner. Because there is no due diligence requirement in the applicable regulation, we will affirm the Board's order.

On October 4, 2006, while on parole, Lawson was arrested and charged with several violations of the Pennsylvania Uniform Firearms Act of 1995, 18 Pa.C.S. §§ 6101–6187. The Board issued a detainer against Lawson and on November 8, 2006, after Lawson waived his rights to a detention hearing and a hearing before a Board panel, the Board ordered Lawson detained pending the disposition of the new criminal charges. Lawson pled guilty to the new offenses on February 15, 2007, and was sentenced to a term of imprisonment of 30 to 60 months on April 18, 2007.

The Board conducted a parole revocation hearing on January 28, 2008, at which Lawson objected to the timeliness of the hearing. In support, Lawson testified that he pled guilty to the new charges on February 15, 2007, and that the Department of Corrections filed a new sentence status sheet with the Board on May 3, 2007. Notes of Testimony, January 28, 2008, at 5, 8 (N.T. ___); Certified Record at 36, 39 (C.R.___). Parole Agent Adrian Rubio testified on behalf of the Board that he received official verification of Lawson's new convictions on November 29, 2007. Agent Rubio also testified that he had requested verification of the convictions in June 2007; he attributed the delay between June and November to "[s]ome problem with the courts." N.T. 6; C.R. 37.

Based upon Agent Rubio's testimony, the hearing examiner denied Lawson's objection, holding that the revocation hearing was timely because the hearing occurred within 120 days of November 29, 2007, the date on which the Board received official verification of Lawson's convictions. On April 2, 2008, the Board issued a decision recommitting Lawson as a convicted parole violator to serve 18 months backtime, when available. Lawson filed a petition for administrative review, again asserting that the January 28, 2008, revocation hearing was untimely. On August 20, 2008, a three-member panel of the Board rejected Lawson's challenge, denied Lawson's petition and affirmed the revocation panel's decision. Lawson now petitions this court for review.[2]

■ Before this Court, Lawson argues that the Board erred in determining that his January 28, 2008, revocation hearing was timely. Lawson contends that when a

---

1. This case was reassigned to the authoring Judge on March 31, 2009.

2. Our scope of review is limited to determining whether constitutional rights have been violated, whether an error of law has been committed or whether the necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

"significant period of time" elapses between a new conviction and the parole agent's receipt of official verification of that conviction, the Board must establish that its agent exercised due diligence in obtaining the verification. It is this "common law" burden that Lawson asserts the Board failed to satisfy in this case.[3]

■ When a parolee alleges that the Board failed to hold a timely revocation hearing, the Board bears the burden of proving that the hearing was timely. *Taylor v. Pennsylvania Board of Probation and Parole*, 931 A.2d 114, 116 (Pa.Cmwlth. 2007), *appeal denied*, 596 Pa. 750, 946 A.2d 690 (2008). Determining whether a revocation hearing was timely is a straightforward inquiry that is governed by Board regulation. The pertinent regulation states that

> [a] revocation hearing shall be held within 120 days from the date the Board received official verification of the plea of guilty or nolo contendere or of the guilty verdict at the highest trial court level. . . .

37 Pa.Code § 71.4(1). For purposes of the regulation, "official verification" is

> [a]ctual receipt by a parolee's supervising parole agent of a direct written communication from a court in which a parolee was convicted of a new criminal charge attesting that the parolee was so convicted.

37 Pa.Code § 61.1.

Applying the regulation to the facts in this case, there is no doubt that Lawson's parole revocation hearing was timely. According to Agent Rubio's credited testimony, he received official verification of Law-son's new convictions on November 29, 2007. The Board conducted Lawson's revocation hearing 61 days later, on January 28, 2008, well within the 120–day time period mandated by 37 Pa.Code § 71.4(1).

■ Lawson acknowledges the Board's well-settled burden under 37 Pa.Code § 71.4(1). He maintains, however, that when "a significant period of time" has elapsed between a parolee's new conviction and the parole agent's receipt of official verification, the Board must also establish that it exercised due diligence in obtaining official verification of the conviction. Lawson argues that the nine months that elapsed between his new convictions and Agent Rubio's receipt of official verification of those convictions was just such a "significant period of time," and that Agent Rubio failed to establish that he exercised "due diligence." Lawson relies primarily upon two decisions of this Court as authority for the "due diligence" requirement: *Ramos v. Pennsylvania Board of Probation and Parole*, 954 A.2d 107 (Pa.Cmwlth.2008) and *Fitzhugh v. Pennsylvania Board of Probation and Parole*, 154 Pa.Cmwlth. 123, 623 A.2d 376 (1993). We reject Lawson's interpretation and application of our precedent.

In *Fitzhugh*, the parolee pleaded guilty to new criminal charges in July 1991, but his revocation hearing was not held until February 1992. The parolee argued that the Board had employees in the court system whose sole function was to retrieve conviction records, which were normally available within a few days after sentencing. The parolee also argued that the Board had instructed agents not to obtain the court records until it was convenient

---

**3.** Assuming the existence of such a common law burden, Lawson does not offer any standards for determining what constitutes a "significant period of time" between a new conviction and the Board's official verification of that conviction. Likewise, he offers no standards for measuring a parole agent's "due diligence" in trying to obtain the official verification.

for the Board to schedule a hearing. This Court expressed concern that if the Board was aware of the conviction but decided not to retrieve available conviction records, there was a possibility of "an unreasonable and unjustifiable delay." *Fitzhugh*, 623 A.2d at 379. In order to dispel that concern, the majority in *Fitzhugh* remanded the matter to the Board to establish facts relating to the delay between the conviction and the Board's receipt of the conviction records. *Fitzhugh* did not establish the broad principle that the Board has an obligation to retrieve conviction records.[4]

Turning to *Ramos*, it is true, as Lawson points out, that this Court cited *Fitzhugh* for the proposition that "if there is a delay between the time the Board has notice of the conviction and the time when the Board receives official verification of the conviction, *the Board has the burden of proving that the delay was not unreasonable and unjustifiable.*" *Ramos*, 954 A.2d at 109 (citing *Fitzhugh*, 154 Pa.Cmwlth. 123, 623 A.2d 376) (emphasis added). This quoted language does not relate to the central issue in *Ramos*, which was one of evidence, *i.e.*, whether the Board could take official notice of statements in the parole agent's report that she attempted to obtain verification on three occasions and otherwise acted appropriately. This Court held that the Board could not take official notice of such statements, which were inadmissible hearsay. The characterization of the *Fitzhugh* holding in *Ramos* was not relevant to the holding and was, therefore, *dicta.*

In summary, the timeliness of a parole revocation hearing is governed by statute and regulation, not the "common law." Neither statute nor regulation places a burden on the Board to demonstrate that it exercised due diligence in obtaining official verification of a parolee's new conviction.[5] The Board's duties are set by the Parole Act and its implementing, duly promulgated regulation at 37 Pa.Code § 71.4(1). Indeed, two cases cited by Lawson illustrate the straightforward nature of the inquiry into whether a parole revocation hearing was timely.

In *Vanderpool v. Pennsylvania Board of Probation and Parole*, 874 A.2d 1280 (Pa.Cmwlth.2005), the parole agent received official verification of the conviction on September 4, 2004, and the hearing was held on September 21, 2004, well within the 120–day period. On that basis, we rejected Vanderpool's contention that he did not have a timely hearing. It is true that the Board, in refuting Vanderpool's untimeliness claim, pointed out the confusion created by his use of aliases, but that observation was nothing more than an

---

4. Nor was this principle established in *Williams v. Pennsylvania Board of Probation and Parole*, 134 Pa.Cmwlth. 597, 579 A.2d 1369 (1990), as the dissent suggests. In *Williams*, the record contained no official verification of the date on which the Board learned that the parolee was available for transfer from a Georgia state correctional facility. On those unique facts, this Court noted that "[w]hen the record contains no official verification, the 120–day period begins to run on the date that the Board could have obtained official verification." *Id.* at 601, 579 A.2d 1369. *Williams* is simply not analogous to the case *sub judice* because the Board *did* receive official verification of Lawson's new

convictions, thus providing a discrete date on which the 120–day period began to run.

5. Lawson argues that Agent Rubio failed to exercise "due diligence" without providing an explanation of what more Agent Rubio should have done. Agent Rubio offered a reason for the "delay," namely, there was a problem with the courts, the details of which he did not know. This suffices. Parole agents have a lot to do, and they do not have the time to chase down documents from court files, let alone investigate the specific reasons for a court's failure to respond to their request for court documents.

aside that was irrelevant to the Board's adjudication. The real import of *Vanderpool* was this Court's reiteration of the analysis in *Lee v. Pennsylvania Board of Probation and Parole,* 141 Pa.Cmwlth. 79, 596 A.2d 264 (1991):

> Moreover, *considering the logistical problems the Board would face in discovering when a parolee was convicted, it is also reasonable for a parole agent to wait for official verification even if the agent is aware that charges are, or may be, pending.* And finally, we hold as a matter of law, that if the parole revocation hearing is held within 120 days after the receipt of the certified charges, that also is reasonable for the purposes of due process.

*Vanderpool,* 874 A.2d at 1284 (quoting *Lee,* 596 A.2d at 265) (emphasis added).

Our analysis was the same in *Taylor v. Pennsylvania Board of Probation and Parole,* 931 A.2d 114 (Pa.Cmwlth.2007), *appeal denied,* 596 Pa. 750, 946 A.2d 690 (2008). There, the Board received official verification on September 27, 2005, and held the revocation hearing on December 14, 2005. The parole agent's testimony that certain court files were unavailable to her due to a court backlog was irrelevant to the outcome. As in *Vanderpool,* we again relied upon *Lee* and affirmed the Board's denial of administrative relief "for the simple reason that Taylor's hearing was held within 120 days of the official verification of Taylor's conviction." *Id.* at 119–120.

Under *Vanderpool* and *Taylor,* it was the Board's receipt of official verification that decided the timeliness issue. This Court distinguished *Fitzhugh* in both cases as inapplicable. This was appropriate because *Fitzhugh* is limited to its facts. The regulation at 37 Pa.Code § 71.4(1) sets a clear timeline for a revocation hearing, and in doing so it strikes a balance between a parolee's right to due process and the Board's ability to obtain information, as this Court explained in *Lee* and its progeny. For a long time, this Court treated *Fitzhugh* as *sui generis* and followed *Lee's* bright line test as the way to resolve a timeliness challenge to a revocation hearing. Today we reaffirm the wisdom of *Lee.*

### ORDER

AND NOW, this 18th day of June, 2009, the order of the Pennsylvania Board of Probation and Parole in the above-captioned matter, dated August 20, 2008, is hereby AFFIRMED.

DISSENTING OPINION BY Senior Judge FRIEDMAN.

The majority concludes that, even where there is a significant delay between the time the Pennsylvania Board of Probation and Parole (Board) has notice of a parolee's conviction and the time when the Board receives official verification of the conviction, the Board is not required to establish that the delay was reasonable and justifiable in order to prove that its revocation hearing was timely. Rather, according to the majority, so long as the Board shows that the revocation hearing was held within 120 days of the Board's receipt of official verification of the parolee's new conviction, the Board satisfies its burden of proving that the hearing was timely. I disagree and, therefore, respectively dissent.

As the majority correctly states, where, as here, a parolee challenges the timeliness of a revocation hearing, the Board bears the burden of proving by a preponderance of the evidence that the hearing was timely. *Ramos v. Pennsylvania Board of Probation and Parole,* 954 A.2d 107 (Pa. Cmwlth.2008). Pursuant to the Board's regulation, a revocation hearing "shall be

held within 120 days from the date the Board received official verification of the plea of guilty or *nolo contendere* or of the guilty verdict at the highest trial court level...." 37 Pa.Code § 71.4(1). Official verification is the actual receipt by a parolee's supervising parole agent of a direct written communication from a court in which the parolee was convicted of a new criminal charge attesting that the parolee was so convicted. 37 Pa.Code § 61.1. There is no question that Rufus Lawson's (Lawson) parole revocation hearing on January 28, 2008, was less than 120 days after Agent Rubio received official verification of Lawson's new conviction on November 29, 2007.

Nevertheless, Lawson relies on *Ramos* and *Fitzhugh v. Pennsylvania Board of Probation and Parole*, 154 Pa.Cmwlth. 123, 623 A.2d 376 (1993), on appeal for the proposition that, even where a parole revocation hearing is held within 120 days of the Board's receipt of official verification, "if there is a delay between the time the Board has notice of the conviction and the time when the Board receives official verification of the conviction, *the Board has the burden of proving that the delay was not unreasonable and unjustifiable.*" *Ramos*, 954 A.2d at 109 (citing *Fitzhugh*) (emphasis added). The majority concludes that the "common law" setting forth the "unreasonable and unjustifiable delay" rule, i.e., the "due diligence" rule, no longer applies to whether a parole revocation hearing is timely.

The majority states:

In summary, the timeliness of a parole revocation hearing is governed by statute and regulation, not the "common law." Neither statute nor regulation places a burden on the Board to demonstrate that it exercised due diligence in obtaining official verification of a parolee's new conviction. The Board's duties are set by the Parole Act and its implementing, duly promulgated regulation at 37 Pa.Code § 71.4(1).

(Majority op. at 88.) However, the "due diligence" rule prevents the Board from violating the due process rights of prisoners. *Williams v. Pennsylvania Board of Probation and Parole*, 134 Pa.Cmwlth. 597, 579 A.2d 1369 (1990). Neither the statute nor the regulation is valid if applied in such a manner as to violate due process. By ignoring the underlying basis for the "common law" rule prohibiting the Board from delaying unreasonably and unjustifiably in obtaining official verification of a conviction, the majority sanctions the violation of prisoner due process rights.

Moreover, to the extent that the majority dismisses *Ramos* and *Fitzhugh* as irrelevant and characterizes the requirement that the Board explain the reason for such a delay as mere *dicta*, I believe the majority errs.

The majority concludes that the unreasonable and unjustifiable delay language in *Ramos* "does not relate to the central issue in *Ramos*, which was one of evidence, *i.e.,* whether the Board could take official notice of statements in the parole agent's report that she attempted to obtain verification on three occasions and otherwise acted appropriately." (Majority op. at 88.) I strongly disagree. The very question in *Ramos*, as here, was "whether the Board offered sufficient evidence that the delay in receiving the official verification evidence was reasonable and justifiable." *Ramos*, 954 A.2d at 109. The court concluded that, because the only evidence offered by the Board to demonstrate that the parole agent acted with due diligence was inadmissible hearsay, "the Board failed to meet its burden that the delay was reasonable or justifiable...." *Id.* at 110. Thus, *Ramos* supports Lawson's position that the Board has to offer evidence

establishing that the delay was reasonable or justifiable in order for the Board to satisfy its burden of proving a timely revocation hearing.

With regard to *Fitzhugh*, the majority states, "*Fitzhugh* did not establish the broad principle that the Board has an obligation to retrieve conviction records." (Majority op. at 88.) Contrary to the majority's position, the court in *Fitzhugh* rejected the notion that a parolee must be forced to wait for an unreasonable period of time until the Board chooses to act upon its knowledge that a conviction has occurred. In so concluding, the court recognized that, where there is the possibility of an unjustifiable and unreasonable delay, the Board must offer evidence justifying the extended delay in obtaining official notification of a known conviction. Accordingly, it is clear under *Fitzhugh* that, if there is an allegedly unreasonable delay between the time the Board has knowledge of a parolee's conviction and the time the Board acts upon that knowledge to obtain the official verification, the Board must offer evidence to justify that delay.

Because I conclude that *Ramos* and *Fitzhugh* are applicable here, I do not believe that the Board satisfied its burden to prove a timely hearing merely because that hearing was held within 120 days of receipt of official verification of a new conviction. Rather, the Board also had the obligation to present evidence establishing that the five-month delay between the date on which the Board learned of Lawson's new conviction and the date on which the Board received official verification of that new conviction was not unreasonable or unjustifiable. I agree with Lawson that *Vanderpool v. Pennsylvania Board of Probation and Parole*, 874 A.2d 1280 (Pa. Cmwlth.2005), and *Taylor v. Pennsylvania Board of Probation and Parole*, 931 A.2d 114 (Pa.Cmwlth.2007), *appeal denied*, 596 Pa. 750, 946 A.2d 690 (2008), support his argument that the Board did not meet that obligation.

In *Vanderpool*, the parolee relied on *Fitzhugh* to argue that there was an unreasonable and unjustifiable delay; however, we rejected that argument because the Board established the reason for delay through the parole agent's specific testimony that she had difficulty in obtaining official verification due to the confusion caused by the parolee's use of numerous aliases. Similarly, in *Taylor*, the parolee relied on *Fitzhugh* to argue that there was no valid reason for the delay between the parole agent's request for proof of the parolee's convictions and the receipt of official verification; however, we rejected that argument, finding *Fitzhugh* distinguishable because the parole agent explained that the delay was the result of the unavailability of court files due to a court backlog and that she took affirmative steps to obtain the official verification.[1] In con-

---

1. The majority asserts that Lawson's reliance on *Vanderpool* and *Taylor* to support his position is misplaced. I disagree.

According to the majority, the real import of *Vanderpool* was this court's reiteration of the analysis in *Lee v. Pennsylvania Board of Probation and Parole*, 141 Pa.Cmwlth. 79, 596 A.2d 264 (1991), and the holding that a parole revocation hearing held within 120 days after the receipt of the certified charges is reasonable for the purposes of due process. (Majority op. at 89.) Although this was the ultimate holding of *Vanderpool*, the court reached that

holding only after rejecting the parolee's assertion that the delay in his case was unreasonable and unjustifiable pursuant to *Fitzhugh*. *Vanderpool*.

Similarly, the majority concludes that, in Taylor, the court again relied on *Lee* to affirm the Board's denial of administrative relief "for the simple reason that Taylor's hearing was held within 120 days of the official verification of Taylor's conviction." (Majority op. at 89, quoting *Taylor*, 931 A.2d at 119–20.) However, the language quoted was not the sole basis for affirming. The court also con-

trast, in *McDonald v. Pennsylvania Board of Probation and Parole*, 673 A.2d 27 (Pa. Cmwlth.1996), and *Williams v. Pennsylvania Board of Probation and Parole*, 145 Pa.Cmwlth. 31, 602 A.2d 434, *appeal denied*, 533 Pa. 616, 618 A.2d 405 (1992), we held that the Board could not prove that the delay was reasonable and justifiable where it failed to offer an explanation for the delay.

Unlike the specific testimony offered by the parole agents in *Vanderpool* and *Taylor*, Agent Rubio did not describe his efforts to obtain the official verification or explain the delay in obtaining that verification. Instead, Agent Rubio stated, "Yeah, we tried to—well we requested original back in June—around June of '07. We weren't able to get it. Some problem with the courts. **I don't know.**" (C.R. at 36–38) (emphasis added). Because Agent Rubio testified that he did not know why there was a five-month delay between his request for official verification and the receipt of that verification, his testimony cannot provide substantial evidence that the delay was reasonable and justifiable. Thus, I do not believe that the Board met its burden of proving that Lawson's revocation hearing was timely, and, accordingly, I would reverse the Board's revocation.

cluded that, based on the testimony regarding the trial court's backlog, "there is no unreasonable delay on the part of the Board as there was in *Fitzhugh* and *Williams [v. Pennsylvania Board of Probation and Parole*, 134 Pa.Cmwlth. 597, 579 A.2d 1369 (1990) ]." *Taylor*, 931 A.2d at 119.

Moreover, I believe that *Lee* is distinguishable from the case presently before the court because, there, the parolee claimed that his revocation was untimely because his parole agent "was on notice of the *pending charges*" against the parolee. *Lee*, 596 A.2d at 265 (emphasis added). However, unlike the parolee in *Lee*, Lawson challenges the delay between the Board's knowledge of his *conviction* and its receipt of official verification of that conviction.