**Marshall GIBSON, Petitioner**

v.

**PENNSYLVANIA BOARD OF PROBATION AND PAROLE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 5, 2010.

Decided Aug. 25, 2010.

David R. Crowley, Chief Public Defender, Bellefonte, for petitioner.

Arthur R. Thomas, Asst. Counsel and Victoria S. Madden, Chief Counsel, Harrisburg, for respondent.

BEFORE: COHN JUBELIRER, Judge, and LEAVITT, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Judge LEAVITT.

Marshall Gibson petitions for review of an adjudication of the Pennsylvania Board of Probation and Parole (Board) that recommitted Gibson as a convicted parole violator. Gibson argues that the Board's parole revocation hearing was untimely, even though it was conducted well within

the time limits established in the Board's regulation. Gibson contends that the Board's failure to speed up the 30–day gap between the parole agent's request for Gibson's conviction records from the Philadelphia County Court of Common Pleas and their receipt rendered his hearing untimely. Finding Gibson's argument without merit, we affirm.

■ On August 28, 2006, Gibson was paroled from his four to eight year sentence for robbery, which was imposed in 2003. On April 30, 2008, Gibson was arrested in Philadelphia and charged with firearm and drug offenses. The Board detained Gibson that same day and on July 29, 2008, Gibson was returned to a state correctional facility. On December 17, 2008, Gibson was moved to a Philadelphia County correctional facility for trial on the above-listed new criminal charges. On December 18, 2008, he was convicted and, on December 30, 2008, returned to a state correctional facility. Gibson's parole agent requested a certified copy of the court record of Gibson's conviction on December 23, 2008, and he received the official conviction verification on January 22, 2009. On April 30, 2009, the Board conducted a parole revocation hearing. On June 10, 2009, the Board recommitted Gibson as a convicted parole violator.

Gibson petitioned for administrative relief on June 18, 2009, claiming that the Board's revocation hearing was not timely. Specifically, Gibson asserted that his agent did not explain the one month delay between the date he requested the official record of Gibson's conviction and its receipt. The Board denied Gibson's request for administrative relief. Because the Board conducted a revocation hearing 98 days after it received the official verification of Gibson's conviction, it concluded that this hearing was timely. It explained its decision as follows:

> The Board determined that the April 30, 200[9] revocation hearing was timely. After review of this case, the appellate appeal panel agrees. Specifically, the panel determined that the Board was required to hold the hearing within 120 days of the official verification date because Mr. Gibson was returned to the jurisdiction of the Department of Corrections prior to his conviction. *In this case, official verification of the conviction was received on January 22, 2009 and the hearing was held 98 days later on April 30, 2009.* Moreover, the month delay between Mr. Gibson's conviction and the Board's receipt of official verification on its face establishes that *the Board made a good faith effort to obtain official verification of the conviction* despite the fact that there was no duty on the Board to do so.

Certified Record, Item No. 14, at 91 (internal citations omitted) (emphasis added). Gibson now petitions for this Court's review.

On appeal,[1] Gibson presents one issue for our consideration. Gibson contends that his parole agent was required to offer an explanation for the one-month delay between his request for a certified copy of Gibson's conviction and the receipt thereof. Gibson acknowledges that his position conflicts with this Court's holding in *Lawson v. Pennsylvania Board of Probation and Parole*, 977 A.2d 85 (Pa.Cmwlth.2009), *appeal denied*, —— Pa. ——, 992 A.2d 890 (2010). However, Gibson believes that *Lawson* was wrongly decided, noting that

1. Our scope of review is limited to determining whether constitutional rights have been violated, whether an error of law has been committed or whether the necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

"photo-electronic devices called copiers ... at the touch of a button exactly duplicate court orders." Gibson's Brief at 23. The Board counters that no statute or regulation requires parole agents to obtain conviction records; *Lawson* controls; and Gibson offers no cogent reason for this Court to reverse *Lawson*.

Gibson argues that our decision in *Lawson* is "seriously flawed" because it is at odds with *Ramos v. Pennsylvania Board of Probation and Parole*, 954 A.2d 107 (Pa.Cmwlth.2008). He further argues that due process requires the Board to establish that it acted with due diligence to obtain the official verification of the conviction.

Again, as we did in *Lawson*, we review the case law relevant to the issue of what a parole agent must do to expedite transmittal of court records. The case law does not support Gibson's position here.

In *Fitzhugh v. Pennsylvania Board of Probation and Parole*, 154 Pa.Cmwlth. 123, 623 A.2d 376 (1993), this Court ordered a remand for additional fact finding in a case where it appeared that the Board deliberately delayed the holding of a parole revocation hearing for over five months. Notably, *Fitzhugh* did not establish that a five-month delay between the date of conviction and receipt of official verification is *per se* unacceptable. *Ramos* also involved a five-month gap in time between the parole agent's request and receipt of parolee's conviction records. The Board found, as fact, that the parole agent had attempted on three occasions to obtain the official verification within that five-month period, which finding was based upon the parole agent's written notes in the record. This Court held in *Ramos* that the Board's factual finding was made in error because it could not take judicial

notice of the parole agent's notes, as it purported to do in its adjudication.

In *Lawson*, the revocation hearing was held more than nine months after the parolee's new conviction, but within 61 days of receipt of the official verification of that conviction. The parole agent testified that a problem with the Philadelphia County Court of Common Pleas had caused the delay. Lawson argued that under *Ramos*, the agent had to explain the reason for the delay in the transmittal of the Court's conviction record in order for the Board's hearing to be timely.

We rejected Lawson's interpretation of *Ramos* and *Fitzhugh*. Specifically, we stated:

> Turning to *Ramos*, it is true, as Lawson points out, that this Court cited *Fitzhugh* for the proposition that "if there is a delay between the time the Board has notice of the conviction and the time when the Board receives official verification of the conviction, *the Board has the burden of proving that the delay was not unreasonable and unjustifiable.*" This quoted language does not relate to the central issue in *Ramos*, which was one of evidence, *i.e.*, whether the Board could take official notice of statements in the parole agent's report that she attempted to obtain verification on three occasions and otherwise acted appropriately. This Court held that the Board could not take official notice of such statements, which were inadmissible hearsay. The characterization of the *Fitzhugh* holding in *Ramos* was not relevant to the holding and was, therefore, *dicta*.

*Lawson*, 977 A.2d at 88 (internal citation omitted) (emphasis in original).

We concluded in *Lawson* that the timeliness of a parole revocation hearing is governed by the Parole Act and the regulation at 37 Pa.Code § 71.4(1).[2] Neither places a

**2.** The Board's regulations provide, in relevant part:

burden on the Board to demonstrate that it exercised due diligence in obtaining official verification of a parolee's new conviction. *Lawson*, 977 A.2d at 88. Indeed, we explained this holding was consistent with our long-standing precedent. In *Lee v. Pennsylvania Board of Probation and Parole*, 141 Pa.Cmwlth. 79, 596 A.2d 264 (1991), we specifically affirmed the logic of the Board's regulation at 37 Pa.Code § 71.4(1), explaining that

> considering the logistical problems the Board would face in discovering when a parolee was convicted, it is also reasonable for a parole agent to wait for official verification even if the agent is aware that charges are, or may be, pending. And finally, *we hold as a matter of law, that if the parole revocation hearing is held within 120 days after the receipt of the certified charges, that also is reasonable for the purposes of due process.*

*Lee*, 596 A.2d at 265 (emphasis added).

Gibson argues, nevertheless, that the holdings in *Lee* and *Lawson* offend due process.[3] He argues that unless this Court imposes a burden upon parole agents to fetch the conviction records, the Board will delay revocation hearings. These arguments are unavailing.

First, Gibson's suggestion that the parole agent can obtain conviction records simply by sending a courier to the courthouse to photocopy the document or having it transmitted by facsimile or email reveals a lack of understanding of the rules of evidence. The condition precedent to the admission of a document into evidence is that it must be authenticated. PA. R.E. 901(a) ("requirement of authentication or identification as condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what the proponent claims").

The Judicial Code governs the authentication process for government records. It states:

> An official record kept within this Commonwealth by any court, magisterial district judge or other government unit, or an entry therein, when admissible for any purpose, *may be evidenced* by an official publication thereof or *by a copy attested by the officer having the legal custody of the record,* or by that officer's deputy, and accompanied by a certificate that the officer has the custody. The certificate may be made by any public officer having a seal of office and having official duties with respect to the government unit in which the record is

---

The following procedures shall be followed before a parolee is recommitted as a convicted violator:

(1) A revocation hearing shall be held *within 120 days from the date the Board received official verification* of the plea of guilty or nolo contendere or of the guilty verdict at the highest trial court level except as follows:

(i) If a parolee is confined outside the jurisdiction of the Department of Corrections, such as confinement out-of-State, confinement in a Federal correctional institution or confinement in a county correctional institution where the parolee has not waived the right to a revocation hearing by a panel in accordance with

*Commonwealth ex rel. Rambeau v. Rundle*, 455 Pa. 8, 314 A.2d 842 (1973), the revocation hearing shall be held within 120 days of the official verification of the return of the parolee to a State correctional facility.

37 Pa.Code § 71.4(1) (emphasis added).

3. In *Lawson*, 977 A.2d at 89, we held that the regulatory scheme satisfies due process:

> The regulation at 37 Pa.Code § 71.4(1) sets a clear timeline for a revocation hearing, and in doing so it strikes a balance between a parolee's right to due process and the Board's ability to obtain information, as this Court explained in *Lee* and its progeny.

kept, authenticated by the seal of that office, or if there is no such officer, by:

(1) The Department of State, in the case of any Commonwealth agency.

(2) The clerk of the court of common pleas of the judicial district embracing any county in which the government unit has jurisdiction, in the case of any government unit other than a Commonwealth agency.

42 Pa.C.S. § 6103(a) (emphasis added).

Gibson's parole agent promptly requested an official verification of conviction five days after Gibson's conviction. He could do no more because he lacked the means, or authority, to compel a court employee to provide the verification. Without that verification Gibson's conviction record was not admissible in a parole revocation hearing.

 Second, Gibson's argument that *Lawson* must be reversed because the Board will resort to stalling tactics to delay parole revocation hearings is at odds with the well-established presumption of administrative regularity. *Jefferson County Assistance Office, Department of Public Welfare v. Wolfe*, 136 Pa.Cmwlth. 115, 582 A.2d 425, 427 (1990). In the absence of contrary evidence, an agency is presumed to have performed its duties properly. *Id.*

The 120–day period for holding Gibson's parole revocation hearing began on January 22, 2009, the date that the parole agent received the official verification of Gibson's

new conviction.[4] Gibson's revocation hearing, held 98 days later on April 30, 2009, was timely. Accordingly, we affirm the Board.

## ORDER

AND NOW, this 25th day of August, 2010, the Order of the Pennsylvania Board of Probation and Parole, dated August 27, 2009, in the above-captioned matter is hereby AFFIRMED.

---

4. The Board notes that 145 days passed from December 18, 2008, the date of Gibson's conviction, to April 30, 2009, the date of his revocation hearing. Gibson was detained in the Philadelphia County Prison from December 18, 2008, through December 30, 2008, for trial, and from February 25, 2009, to March 13, 2009, for sentencing. These days in county prison total 28 days Gibson was not available to appear at a revocation hearing. Accordingly, the Board argues that these 28 days must be excluded from 145 days, which means that Gibson's revocation hearing took place 117 days after his conviction. The Board has a point, but we base our holding on the fact that the revocation hearing took place 98 days after the Board's receipt of the official verification of Gibson's conviction.