# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sherman Sullivan,                  :
              Petitioner     :
                       :
         v.             :   No. 883 C.D. 2018
                       :   Submitted: January 4, 2019
Pennsylvania Board       :
of Probation and Parole,    :
             Respondent   :

**BEFORE:**    **HONORABLE RENÉE COHN JUBELIRER,** Judge
                **HONORABLE ROBERT SIMPSON,** Judge
                **HONORABLE MICHAEL H. WOJCIK,** Judge

**OPINION NOT REPORTED**

**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**          **FILED: April 18, 2019**

Sherman Sullivan (Sullivan) petitions for review of a June 15, 2018 Order of the Pennsylvania Board of Probation and Parole (Board) that affirmed the Board's action mailed February 2, 2018, recommitting Sullivan as a convicted parole violator (CPV). Sullivan is represented by Richard C. Shiptoski, Esquire (Counsel), of the Luzerne County Public Defender's Office. Counsel has filed a Petition for Leave to Withdraw as Counsel (Application to Withdraw) and an *Anders*[1] Brief, which are based on his conclusion that the issues raised in Sullivan's Petition for Review are without merit and are wholly frivolous. For the

---

[1] *Anders v. California*, 388 U.S. 924 (1967).

following reasons, we grant Counsel's Application to Withdraw and affirm the Board's Order.

On May 27, 2014, the Board paroled Sullivan, and he was released from custody on July 9, 2014. (Order to Release on Parole/Reparole, Certified Record (C.R.) at 6.) At the time of his parole, Sullivan was serving a sentence for retail theft and terroristic threats. (Sentence Status Summary, C.R. at 1-2.) His maximum sentence date was December 31, 2016. (*Id.*) On October 24, 2014, the Philadelphia Police Department arrested Sullivan for retail theft, and the Board issued a Warrant to Commit and Detain on October 25, 2014. (C.R. at 10-11.) The charges were dismissed on November 20, 2014. (*Id.* at 14.) The Philadelphia Police Department arrested Sullivan again on retail theft charges on February 22, 2015. (*Id.* at 17.) That same day, the Board issued another Warrant to Commit and Detain. (*Id.* at 16.) The charges were withdrawn on April 10, 2015. (*Id.* at 19.) On December 20, 2015, the Upper Merion Township Police Department arrested Sullivan[2] for retail theft, receiving stolen property, and false identification to a police officer. (*Id.* at 21-22.) The Board issued a Warrant to Commit and Detain that same day. (*Id.* at 20.) Sullivan subsequently pleaded guilty to a summary offense of retail theft on March 22, 2016, and the remaining charges were nolle prossed. (*Id.* at 27-28.)

On July 12, 2016 Plymouth Township Police arrested Sullivan on new criminal charges, and on July 20, 2016, Upper Merion Township Police arrested Sullivan on additional charges. (*Id.* at 46, 48.) Bail was set, and Sullivan posted bail in one case, but not the other. (*Id.* at 81, 95). On July 12, 2016, the Board

---

[2] The record reflects the charges were filed against Felton Robinson, but the parties do not dispute this individual was Sullivan.

issued a Warrant to Commit and Detain. (*Id.* at 25.) As a result of the new charges, the Board issued a decision recorded August 11, 2016, and mailed August 24, 2016, detaining Sullivan pending its disposition. (*Id.* at 33.) On January 19, 2017, the Board declared Sullivan delinquent for control purposes effective May 4, 2016. (*Id.* at 34.)

On July 14, 2017, Sullivan pleaded guilty to charges at two different dockets. In one case, he pleaded guilty to retail theft, and in the other, he pleaded guilty to retail theft and conspiracy to commit retail theft.[3] (Trial/Plea/Sentence forms, C.R. at 36-39.) Sullivan was sentenced to serve 11½ to 23 months with credit for the time he served from July 20, 2016, to July 14, 2017. (*Id.* at 37, 39.) He was released to the street on July 17, 2017. (C.R. at 52.)

The Board issued a Warrant to Commit and Detain on October 17, 2017. (*Id.* at 35.) A revocation hearing took place on October 30, 2017, at which Sullivan was represented by a public defender. At the hearing, the Hearing Examiner indicated that Sullivan had executed a waiver of hearing form,[4] but it was not received in time, which is why a hearing was held. (Hr'g Tr. at 6, C.R. at 59; Waiver of Revocation Hearing Form, C.R. at 40.) The public defender objected to the timeliness of the hearing, but Sullivan's Parole Agent testified the charges were verified on July 31, 2017. (Hr'g Tr. at 10, C.R. at 63.) Based upon this testimony, the Hearing Examiner found the hearing was timely as it occurred within 120 days of the verification of conviction. (*Id.*) The Parole Agent also

---

[3] The charges in the second case named Sherman L. Robinson as the defendant. Again, the parties do not dispute that this individual was Sullivan.

[4] In the form, Sullivan admitted to pleading guilty to the retail theft and conspiracy charges.

testified as to the new criminal charges and introduced Trial/Plea/Sentence Reports for both cases. Sullivan acknowledged the convictions. (Hr'g Tr. at 9, C.R. at 62.)

By action mailed on February 2, 2018, the Board recommitted Sullivan as a CPV to serve nine months of backtime based on his convictions on the new charges against him. To find that Sullivan had been convicted, the Board relied upon the "certified copy of court record proving [your] conviction[,] Parole Agent's testimony[, and] your acknowledgment of conviction." (Notice of Board Decision, C.R. at 112.) The Board indicated it did not award Sullivan credit for time spent at liberty on parole because of his "poor supervision history." (*Id.* at 112-13.) Sullivan's new maximum date was recalculated to October 20, 2019.

Sullivan filed a pro se Administrative Remedies Form on February 28, 2018, wherein he alleged:

> [t]he Board erred in its necessary findings, and the findings are not supported by substantial evidence, the findings were an error of law, and violated constitutional rights of [Sullivan], the Board lacked jurisdiction to revoke parole and recompute [Sullivan]'s maximum expiration date, [and] the 9 month recommitment period exceeded the presumptive range.

(Administrative Remedies Form, C.R. at 119.) In his Petition for Administrative Review, which accompanied his Administrative Remedies Form, Sullivan also alleged he was "entitled to backtime served credit time for the time the Board's warrant was issued prior to his recommitment order," that the Board erred in recalculating his maximum date as he was not credited for time spent incarcerated and it used the wrong date he was available to begin serving his sentence, and he was wrongly denied credit for the time he spent at liberty on parole. (Petition for Administrative Review ¶¶ 13-16, C.R. at 122.)

4

The Board responded to Sullivan's administrative appeal on June 15, 2018. It noted that Sullivan was aware that the Board may deny him credit for time spent at liberty on parole and that he had admitted to the violations. It found there were no constitutional violations and that Sullivan was recommitted for nine months, which was within the presumptive range. Finally, the Board determined it properly recalculated Sullivan's maximum date. Sullivan now petitions this Court for review.

In his pro se Petition for Review, Sullivan reiterates many of the arguments he made in his administrative appeal to the Board. He asserts the Board's Decision did not explain the reasons for recommitting him as a CPV to serve nine months of backtime or how his maximum date was recalculated. (Petition for Review ¶¶ 12-13.) Sullivan alleges the "recalculation of his original maximum sentence . . . is a violation of [a] Constitutional provision," and he was not provided a timely revocation hearing. (*Id.* ¶¶ 19-20.) Sullivan also objected on the grounds that the Board: "erred in recalculatin[g] his original maximum sentencing date," "did not have the authority to recalculate his original sentencing maximum date," "imposed an improper recommitment [sic] term of 9 months," and "violated his due process rights." (*Id.* ¶¶ 21-24.)

With his Petition for Review, Sullivan filed an Application for Appointment of Counsel, which this Court granted on July 23, 2018, appointing the Luzerne County Public Defender's Office to represent him. On September 19, 2018, Counsel filed the Application to Withdraw, along with an *Anders* Brief, explaining why he believed Sullivan's arguments were frivolous. Counsel avers in the Application to Withdraw that he met with Sullivan in state prison "to discuss his appeal, [to] review his issues and to review documentation." (Application to

5

Withdraw ¶ 4.) He further avers that he "made a conscientious review of the certified record, relevant case law and statutes, and has concluded that [Sullivan]'s grounds alleged for his appeal are without merit and wholly frivolous." (*Id.* ¶ 5.) The Application to Withdraw and supporting *Anders* Brief were mailed to Sullivan on September 19, 2018. (*Id.* ¶ 7; Proof of Service.)

On September 25, 2018, the Court issued an order directing that Counsel's Application to Withdraw be considered with the merits of Sullivan's Petition for Review.[5] The order further gave Sullivan 30 days to either obtain substitute counsel or file a brief on his own behalf. On October 19, 2018, Sullivan filed what was labeled "Response to Public Defender's Petition for Leave to Withdraw as Counsel," wherein he asks this Court to deny Counsel's Application to Withdraw. Sullivan alleges the *Anders* Brief is deficient in that it does not comply with the requirements of an *Anders* Brief.[6] For the reasons that follow, we disagree.

As a preliminary matter, where a parolee's right to counsel is constitutional rather than statutory, appointed counsel must file an *Anders* Brief in support of an

---

[5] By order dated November 20, 2018, we stayed the Board's obligation to file a brief on the merits pending disposition of the Application to Withdraw.

[6] On March 21, 2019, and April 1, 2019, Sullivan filed two additional responses to the Application to Withdraw arguing his case is controlled by our recent decisions in *Penjuke v. Pennsylvania Board of Probation and Parole*, __ A.3d __, (Pa. Cmwlth., No. 1304 C.D. 2017, filed February 1, 2019), and *Brady v. Pennsylvania Board of Probation and Parole* (Pa. Cmwlth., No. 262 C.D. 2018, filed February 1, 2019). His two most recent responses, however, are untimely, and Sullivan did not seek leave to file them. Rule 2501 of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 2501. Nor did he establish that he is entitled to *nunc pro tunc* relief. Accordingly, we strike both responses from the docket. Regardless, the issue raised in the latest responses is without merit. *Penjuke* and *Brady* involved revocation of street time for technical parole violators (TPV). There is nothing in the record that suggests the Board reinstated street time Sullivan was previously credited as a TPV.

6

application to withdraw. A constitutional right to counsel arises in appeals from determinations revoking parole and exists where a parolee has a

> colorable claim (i) that he has not committed the alleged violation of the conditions upon which he is at liberty; or (ii) that, even if the violation is a matter of public record or is uncontested, there are substantial reasons which justified or mitigated the violation and make revocation inappropriate, and that the reasons are complex or otherwise difficult to develop or present.

*Hughes v. Pa. Bd. of Prob. & Parole*, 977 A.2d 19, 26 (Pa. Cmwlth. 2009) (quoting *Gagnon v. Scarpelli*, 411 U.S. 778, 790 (1973)). Where a parolee's right to counsel is not guaranteed by the constitution but instead granted by statute, a no-merit letter pursuant to *Commonwealth v. Turner*, 544 A.2d 927, 928 (Pa. 1988), suffices, and counsel is excused from filing an *Anders* brief. *See* Section 6(a)(10) of the Public Defender Act, Act of December 2, 1968, P.L. 1144, *as amended*, 16 P.S. § 9960.6(a)(10); *Commonwealth v. Santiago*, 978 A.2d 349, 351 n.2 (Pa. 2009); *Hughes*, 977 A.2d at 24-25. In the instant matter, given Sullivan's due process arguments, it appears that he has a constitutional, rather than a statutory, right to counsel, which is apparently why Counsel filed the *Anders* Brief instead of a no-merit letter with his Application to Withdraw.[7]

While an indigent parolee has the right to assistance of counsel, a parolee is not entitled to representation by appointed counsel to pursue a frivolous appeal. *Adams v. Pa. Bd. of Prob. & Parole*, 885 A.2d 1121, 1123 (Pa. Cmwlth. 2005). In

---

[7] If Sullivan does not have a constitutional right to counsel but a statutory one, Counsel would have had to file a no-merit letter, which must include an explanation of "the nature and extent of [counsel's] review and [a] list[ of] each issue the petitioner wished to have raised, with counsel's explanation of why those issues [are] meritless." *Turner*, 544 A.2d at 928. As our discussion will reflect, Counsel's Application to Withdraw and *Anders* Brief would satisfy the requirements of a no-merit letter.

those situations, "court appointed counsel may seek to withdraw if counsel concludes, after a thorough review of the record, [that] the appeal is 'wholly frivolous.'" *Id.* A wholly frivolous appeal is one that "completely lacks factual or legal reasons that might arguably support" it. *Id.* In order to withdraw as counsel, counsel must first "send to the petitioner: (1) a copy of the . . . [*Anders* B]rief; (2) a copy of counsel's petition to withdraw; and (3) a statement advising petitioner of the right to proceed pro se or by new counsel." *Zerby v. Shanon*, 964 A.2d 956, 960 (Pa. Cmwlth. 2009) (quoting *Commonwealth v. Wrecks*, 931 A.2d 717, 721 (Pa. Super. 2007)). We previously explained the requirements of an *Anders* Brief, stating it must, at a minimum:

> (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous.

*Seilhamer v. Pa. Bd. of Prob. & Parole*, 996 A.2d 40, 43 n.5 (Pa. Cmwlth. 2010) (emphasis omitted) (quoting *Santiago*, 978 A.2d at 361). If counsel complies with the aforementioned technical requirements, then this Court will independently assess the merits of the case to determine if the petition for review is, as counsel asserts, frivolous. *Id.* at 44.

Here, a review of Counsel's Application to Withdraw reveals that he has satisfied the technical requirements set forth above. Counsel notified Sullivan of his request to withdraw, furnished Sullivan with a copy of the *Anders* Brief, and informed Sullivan that he had a right to obtain new counsel or file a brief raising any issues he believed have merit. A review of Counsel's *Anders* Brief likewise shows it meets the technical requirements. It provides record citations and a

8

summary of the procedural history and facts. Counsel identified eight issues raised in the Petition for Review, which correspond with the eight issues Sullivan lists in his brief. (*Compare* Counsel's *Anders* Brief at 15-30, *with* Sullivan's Brief at 2-3.) Counsel provides a thorough discussion of those issues and explains why they are frivolous. Counsel's *Anders* Brief reflects that he thoroughly reviewed the record and the applicable law. Therefore, we conclude that Counsel complied with the technical requirements for filing an application to withdraw. Accordingly, we must now independently review the merits of Sullivan's Petition for Review to determine if, indeed, it is frivolous.[8]

1. **Whether the Board erred in recommitting Sullivan as a CPV for a period outside the presumptive range.**

Sullivan first argues that he was improperly recommitted beyond the presumptive range for violating his parole. The Pennsylvania Supreme Court has held that "[a]s long as the period of recommitment is within the presumptive range for the violation," this Court should "not entertain challenges to the propriety of the term of recommitment." *Smith v. Pa. Bd. of Prob. & Parole*, 574 A.2d 558, 560 (Pa. 1990). The presumptive ranges for parole violations are found in Section 75.2 of the Board's regulations, 37 Pa. Code § 75.2. The two counts of retail theft to which Sullivan pleaded guilty were graded as misdemeanors of the first degree. (Trial/Plea/Sentence Forms, C.R. at 36, 38.) The presumptive range for this offense is 6 to 12 months. 37 Pa. Code § 75.2. The presumptive range for conspiracy relates to the specific crime, which here is retail theft, so the

---

[8] Our review in parole revocation cases "is limited to a determination of whether necessary findings are supported by substantial evidence, [whether] an error of law was committed, or whether constitutional rights of the parolee were violated." *Johnson v. Pa. Bd. of Prob. & Parole*, 706 A.2d 903, 904 (Pa. Cmwlth. 1998).

9

presumptive range for the conspiracy offense is also 6 to 12 months. *Id.* Consequently, the maximum aggregate sentence for the 3 charges (2 counts of retail theft and 1 count of conspiracy to commit retail theft) is 36 months. Here, the Board's imposition of nine months of backtime is within the presumptive range for parole violations resulting from these convictions. Therefore, in compliance with *Smith*, we will not disturb the Board's Order. Sullivan's argument, thus, "lacks factual or legal reasons that might arguably support" it. *Adams*, 885 A.2d at 1123. We must therefore find this issue lacks merit and is "'wholly frivolous.'" *Id.*

### 2. Whether the Board erred and violated Sullivan's constitutional rights in recalculating his maximum date without adequate explanation.

In his second argument, Sullivan asserts that the Board did not adequately explain how it recalculated his new maximum date. At the time of his release on parole on July 9, 2014, Sullivan's maximum date was December 31, 2016.[9] This left 906 days remaining on his sentence. The Board credited Sullivan for 173 days for the periods of time he was incarcerated on the criminal charges that were withdrawn and did not result in a criminal conviction.[10] This left Sullivan with 733 days remaining on his sentence. The Board advised Sullivan that it was exercising

---

[9] Sullivan alleges in his brief that his maximum date was November 1, 2015, (Sullivan's Brief at 3), but we find nothing in the record to support this date. Moreover, when asked by the Hearing Examiner at the revocation hearing if his maximum date was December 31, 2016, Sullivan responded yes. (Hr'g Tr. at 7, C.R. at 60.) He likewise averred in his Petition for Review that his original maximum sentence date was December 31, 2016. (Petition for Review ¶ 2.)

[10] These periods were from October 25, 2014, to November 20, 2014, which was 26 days; February 22, 2015, to April 14, 2015, which was 51 days; and December 20, 2015, to March 25, 2016, which was 96 days. (Order to Recommit, C.R. at 114.)

its discretion not to award Sullivan with credit for the time he spent at liberty on parole because of his "poor supervision history." (Notice of Board Decision, C.R. at 112-13.) The Board also explained, in its response to Sullivan's Administrative Remedies Form, that Sullivan was not credited with any of the time he was incarcerated on the new charges because he did not post bail and therefore was being held on either the new charges or on both the new charges and a Board detainer during this time. (Board's June 15, 2018 Order, C.R. at 126.) The Board further explained that, under Section 6138(a)(5) of the Prisons and Parole Code (Parole Code),[11] 61 Pa. C.S. § 6138(a)(5), Sullivan was required to serve his new county sentence first. (C.R. at 127.) Sullivan was released from county jail to the street on July 17, 2017, but did not become available to serve his time until October 17, 2017, when the Board issued its Warrant to Commit and Detain.

---

[11] Section 6138(a)(5) provides:

[i]f a new sentence is imposed on the parolee, the service of the balance of the term originally imposed by a Pennsylvania court shall precede the commencement of the new term imposed in the following cases:

(i) If a person is paroled from a State correctional institution and the new sentence imposed on the person is to be served in the State correctional institution.

(ii) If a person is paroled from a county prison and the new sentence imposed upon him is to be served in the same county prison.

**(iii) In all other cases, the service of the new term for the latter crime shall precede commencement of the balance of the term originally imposed.**

61 Pa. C.S. § 6138(a)(5) (emphasis added). Because Sullivan's new sentence was to be served in county jail, the third provision applies.

11

When the 733 days remaining are added to October 17, 2017, the new maximum sentence date is October 20, 2019. The Board explained this in its Order to Recommit and its June 15, 2018 Order. (*Id.* at 114-15, 125-27.) Thus, there "lacks factual or legal reasons that might arguably support" Sullivan's argument on this issue and, therefore, it lacks merit and is "'wholly frivolous.'" *Adams*, 885 A.2d at 1123.

**3. Whether the Board lacked jurisdiction to revoke Sullivan's parole and recalculate his maximum date when his original maximum date had expired.**

Sullivan next argues that the Board could not revoke his parole because his original maximum date had already expired. He contends he was arrested and convicted after his original maximum date. Sullivan's argument is misplaced. Section 6138(a)(1) of the Parole Code provides:

> A parolee under the jurisdiction of the board released from a correctional facility who, **during the period of parole or while delinquent on parole, commits a crime** punishable by imprisonment, for which the parolee is convicted or found guilty by a judge or jury or **to which the parolee pleads guilty or nolo contendere at any time thereafter** in a court of record, may at the discretion of the board be recommitted as a parole violator.

61 Pa. C.S. § 6138(a)(1) (emphasis added).

The offense dates for Sullivan's new charges are May 1, 2016, and August 8, 2015, respectively. (C.R. at 81, 95.) He was arrested on July 12, 2016, and July 20, 2016, respectively. (*Id.* at 46, 48.) These predated his maximum date, which was December 31, 2016.[12] Precedent dictates that "the Board retains jurisdiction to

---

[12] Sullivan's argument again relies upon an inaccurate maximum date. *See supra* note 8.

12

recommit a parolee convicted of a crime committed while on parole even after the expiration of an original maximum sentence," and, therefore, the fact that he pleaded guilty to the charges on July 14, 2017, is of no moment. *Adams*, 885 A.2d at 1124.[13] This argument thus lacks merit and is "'wholly frivolous'" because there are no "factual or legal reasons that might arguably support" Sullivan's argument on this issue. *Id.* at 1123.

### 4. Whether the Board erred because its decision was not supported by substantial evidence, there was an error of law, or a constitutional right was violated.

Sullivan also argues that the Board erred in recommitting him because there was insufficient proof that he had been convicted of new criminal charges. As a result, he claims his procedural due process rights were violated. (Sullivan's Brief at 6.) The Board bears the burden of proof of showing, by a preponderance of the evidence, that a parolee violated his parole. *Nickens v. Pa. Bd. of Prob. & Parole*, 502 A.2d 277, 279 (Pa. Cmwlth. 1985). "Substantial evidence has been defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Chapman v. Pa. Bd. of Prob. & Parole*, 484 A.2d 413, 416 (Pa. Cmwlth. 1984) (internal quotation marks omitted). Here, to show Sullivan's conviction on the new charges, the parole supervisor presented a certified copy of the Trial/Plea/Sentence forms in Sullivan's criminal case. Certified copies of court records are sufficient to support the recommitment of a parolee as a CPV. *Id.* In

---

[13] *Adams* involved Section 21.1(a) of the Parole Act, Act of August 6, 1941, P.L. 861, *as amended*, *formerly* 61 P.S. § 331.21a(a), *repealed by* Section 11(b) of the Act of August 11, 2009, P.L. 147, No. 33, effective October 13, 2009, 61 Pa. C.S. §§ 101-6309. Section 21.1 was added by Section 5 of the Act of August 24, 1951, P.L. 1401. Section 21.1(a) is similar to Section 6138(a)(1) of the Parole Code, which replaced the Parole Act.

addition, Sullivan acknowledged the convictions at the hearing and when he executed his waiver form. (Hr'g Tr. at 9, C.R. at 62; Waiver of Revocation Hearing Form, C.R. at 40.) A reasonable mind might accept any of this evidence as adequate to support the Board's conclusion. As such, the Board's finding of Sullivan's new convictions are supported by substantial evidence, and the Board satisfied its burden of proving those convictions by a preponderance of the evidence. Thus, there "lacks factual or legal reasons that might arguably support" Sullivan's argument on this issue and, therefore, it lacks merit and is "'wholly frivolous.'" *Adams*, 885 A.2d at 1123.

**5.    Whether Sullivan is entitled to backtime credit for the time he was held on a Board warrant prior to his recommitment order.**

Sullivan next asserts that he did not receive credit for the period of time he was held on the Board's warrant. As discussed in part 2 above, Sullivan was credited for 173 days, which represents the time he spent in confinement that did not result in a conviction in a court of record. It is not clear for what other time Sullivan claims entitlement to a credit. He was arrested on one set of the new charges on July 12, 2016, which is the same day the Board lodged its detainer. Additional charges were filed on July 20, 2016. Sullivan posted bail on the first set of charges on August 1, 2016, but did not post bail in the second case. (C.R. at 81, 95.) He pleaded guilty and was sentenced in both cases on July 14, 2017, was paroled from county jail on July 17, 2017, and was taken into Board custody on October 17, 2017.

Between the time of an arrest and conviction, a parolee may be detained on new charges, on a Board detainer warrant, or on both. *See generally Martin v. Pa. Bd. of Prob. & Parole*, 840 A.2d 299 (Pa. 2003). In *Gaito v. Pennsylvania Board of Probation and Parole*, the Supreme Court held that if the parolee has met bail

14

on the new charges, but remains in custody **solely** on the Board's detainer, then the time the parolee spends in custody "shall be credited against [the] original sentence." 412 A.2d 568, 571 (Pa. 1980) (emphasis added). On the other hand, if the parolee "remains incarcerated prior to trial because [the parolee] has failed to satisfy bail requirements on the new criminal charges, then the time spent in custody shall be credited to [the] new sentence." *Id.* Similarly, when a parolee "[i]s detained under both the Board's warrant and the new criminal charges, this time is properly allocated to his new criminal sentence." *Hammonds v. Pa. Bd. of Prob. & Parole*, 143 A.3d 994, 999 (Pa. Cmwlth. 2016). Only if "it is not possible to award all of the credit on the new sentence because the period of pre-sentence incarceration exceeds the maximum term of the new sentence" may the excess time be applied to the parolee's original sentence. *Armbruster v. Pa. Bd. of Prob. & Parole*, 919 A.2d 348, 355 (Pa. Cmwlth. 2007) (emphasis omitted).

Here, Sullivan is not entitled to credit for the time between his arrest and conviction because Sullivan posted bail in only one of the two cases. (C.R. at 81, 95.) Therefore, he was being held on **both** the Board's detainer and the new charges. As a result, the time served between the arrest and the new conviction was credited to his new sentence. *Gaito*, 412 A.2d at 571. The trial court credited this time towards his new sentence. (*See* Trial/Plea/Sentencing forms, C.R. at 37, 39.) Accordingly, Sullivan's argument on this issue "lacks factual or legal reasons that might arguably support" his claims, and as a result it lacks merit and is "'wholly frivolous.'" *Adams*, 885 A.2d at 1123.

**6. Whether Sullivan is entitled to credit for the time between July 17, 2017, when he was paroled on the county sentence, to October 17, 2017, when he became available to begin serving his backtime.**

Sullivan also argues that he was entitled to credit for the time period between his parole on the county sentence (July 17, 2017) and when he became available to the Board to begin serving his back time (October 17, 2017). The basis for this argument is not clear,[14] as Sullivan acknowledges that he was released from county jail on July 17, 2017, and was not taken into custody by the Board until October 17, 2017, when he reported to his parole officer. (Sullivan's Brief at 7.) During this time, Sullivan was not being detained on either new criminal charges or on a Board warrant. Accordingly, he is not entitled to credit for this time period. *Gaito*, 412 A.2d at 571. Once again, Sullivan's argument "lacks factual or legal reasons that might arguably support" his claim, and as a result it lacks merit and is "'wholly frivolous.'" *Adams*, 885 A.2d at 1123.

**7. Whether the Board erred in not granting him credit for the time he was at liberty on parole pursuant to Section 6138(a)(2.1) of the Parole Code, 61 Pa. C.S. § 6138(a)(2.1).**

In his next to last argument, Sullivan argues that the Board erred in not granting him credit for the time he spent at liberty on parole. In support of this argument, he cites Section 6138(a)(2.1)(i) of the Parole Code, which provides:

The board may, in its discretion, award credit to a parolee recommitted under paragraph (2) for the time spent at liberty on parole, unless any of the following apply:

(i) The crime committed during the period of parole or while delinquent on parole is a crime of violence as defined in 42 Pa.[]C.S.

---

[14] To the extent Sullivan is arguing that he is entitled to credit for time spent at liberty on parole, see the discussion in part 7, *infra*.

16

> § 9714(g) (relating to sentences for second and subsequent offenses) or a crime requiring registration under 42 Pa.[]C.S. Ch. 97 Subch. H (relating to registration of sexual offenders).

61 Pa. C.S. § 6138(a)(2.1)(i). Because retail theft and conspiracy to commit retail theft are not crimes of violence, Sullivan argues he should have been granted credit against his maximum sentence for time spent at liberty on parole.

However, it is well settled that by its plain statutory language which states '[t]he board **may, in its discretion,** award credit . . . for the time spent at liberty on parole . . . ," the General Assembly granted the Board broad discretion in parole matters. *Id.* (emphasis added); *see also Commonwealth v. Vladyka*, 229 A.2d 920, 922 (Pa. 1967). To properly exercise that discretion, "the Board must articulate the basis for its decision" and "simply checking 'No' on a standard hearing form" is not enough. *Pittman v. Pa. Bd. of Prob. & Parole,* 159 A.3d 466, 474 (Pa. 2017).

Here, the Board complied with its statutory duty of providing a brief statement of the reasons for its action. It expressly stated that it was exercising its discretion and was not awarding Sullivan with credit for the time he spent at liberty on parole because of his "poor supervision history." (Notice of Board Decision, C.R. at 112-13.) This statement is supported by the record, which reflects Sullivan was repeatedly arrested and reconfined as a parole violator. (*See* Supervision History, C.R. at 50-53.) The Hearing Examiner noted that Sullivan "ha[d] a lot of Board actions and asked Sullivan "[w]hen is it going to stop." (Hr'g Tr. at 13-14, C.R. at 66-67.) As a result, Sullivan's argument "lacks factual or legal reasons that might arguably support" his claim, and therefore it lacks merit and is "'wholly frivolous.'" *Adams*, 885 A.2d at 1123.

**8.      Whether Sullivan was provided a timely revocation hearing.**

In his final issue, Sullivan argues he was not provided with a timely revocation hearing.   Under Section 71.4(1) of the Board's regulations, "[a] revocation hearing shall be held within 120 days from the date the Board received official verification of the plea of guilty . . . at the highest trial court level . . . ."  37 Pa. Code § 71.4(1).  "When a parolee alleges that the Board failed to hold a timely revocation hearing, the Board bears the burden of proving that the hearing was timely." *Lawson v. Pa. Bd. of Prob. & Parole*, 977 A.2d 85, 87 (Pa. Cmwlth. 2009).  The credited testimony of a parole agent as to when verification occurred is sufficient for the Board to meet its burden.  *Id.*

Here, Sullivan's revocation hearing occurred on October 30, 2017.  At the hearing, Parole Agent testified the charges were verified on July 31, 2017.  (Hr'g Tr. at 10, C.R. at 63.)  Based upon this testimony, the Hearing Examiner found the hearing was timely as it occurred within the120-day period.  (*Id.*)  Because October 30, 2017, was only 91 days after Sullivan's convictions were verified, it was timely under the regulation.   As such, this issue, too, lacks merit and is "'wholly frivolous'" because Sullivan's argument "lacks factual or legal reasons that might arguably support" his claim.  *Adams*, 885 A.2d at 1123.

For the foregoing reasons, we grant Counsel's Application to Withdraw and affirm the Board's June 15, 2018 Order.   In addition, we strike Sullivan's responses filed March 21, 2019, and April 1, 2019, pursuant to Rule 2501 of the Pennsylvania Rules of Appellate Procedure.

_____
**RENÉE COHN JUBELIRER,** Judge

18

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Sherman Sullivan,                                  :
                              Petitioner           :
                                                   :
              v.                                   :      No. 883 C.D. 2018
                                                   :
Pennsylvania Board                                 :
of Probation and Parole,                           :
                              Respondent           :

## O R D E R

**NOW**, April 18, 2019, the Petition for Leave to Withdraw as Counsel filed by Richard C. Shiptoski, Esq., is **GRANTED,** and the Order of the Pennsylvania Board of Probation and Parole, entered in the above-captioned matter, is **AFFIRMED**. In addition, the responses filed by Sherman Sullivan on March 23, 2019, and April 1, 2019, respectively, are STRICKEN pursuant to Rule 2501 of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 2501.

_____
**RENÉE COHN JUBELIRER,** Judge